James **HANNON**, et al., Plaintiffs,

v.

**UNITED STATES, Defendant.**

Valencia **ABRAMS**, et al., Plaintiffs,

v.

**UNITED STATES, Defendant.**

Nos. 91–1334C, 92–469C.

United States Court of Federal Claims.

April 18, 1994.

---

Irving Kator, Kator, Scott & Heller, Chtd., Washington, DC, atty. of record, for plaintiff. Katherine L. Garrett, of counsel.

Thomas D. Dinackus, Commercial Litigation Branch, Civ. Div., Dept. of Justice, Washington, DC, with whom were Thomas W. Petersen, Asst. Director, David M. Cohen, Director, and Frank W. Hunger, Asst. Atty. Gen., attys. of record, for defendant. Sean P. Murphy, James E. Hicks, of counsel.

## OPINION

HORN, Judge.

The motions currently before this court are plaintiffs' motions for certification as a class of approximately 340 GS–1810 diversion investigators, employed by the Drug Enforcement Agency (DEA). Plaintiffs seek recovery of overtime compensation from the United States government pursuant to the Federal Employees' Compensations Act ("FECA"), codified in scattered sections of 5 U.S.C. (1988) and/or the Federal Law Enforcement Pay Reform Act of 1990, Pub.L. No. 101–509, tit. IV, 104 Stat. 1389, 1465, *as amended by* Pub.L. No. 102–378, § 3(5)–(9), 106 Stat. 1356 ("FLEPRA"). The defendant, United States, opposes class certification and argues that this court is obligated to make fact based determinations for each of the plaintiffs, given decisions in this circuit that the court "must evaluate the duties actually performed by the employee" and cannot perform the analysis solely based on an employee's official position description. Upon consideration of the arguments advanced by both parties, the court finds that it would be premature to certify the above-captioned plaintiffs as members of a class. Therefore, the plaintiffs' motions are, hereby, DENIED, without prejudice.

1. The guidelines were issued in 1972 and still

## FACTS

Plaintiffs, James Hannon, John Buckley and Lewis Colosimo, in Case No. 91–1334C, and plaintiffs, Valencia Abrams, John Buckley, Joanne Chiavaro, Lewis Colosimo, Thomas Crow, James Hannon, Caroline Jones, J. Anthony Sheller, and Ronald J. Townsend, in Case No. 92–469C, brought these actions on behalf of themselves and approximately 340 other similarly situated DEA Diversion Investigators (GS/GM–1810). The plaintiffs are employees of the DEA at the United States Department of Justice (DOJ), ranging from grade five through grade sixteen. Plaintiffs allege in both complaints that the decision to deny plaintiffs overtime compensation and benefits in accordance with "FECA" and "FLEPRA", while providing such compensation to special agents, GS–1811 Criminal Investigators, also employed by the DEA, is arbitrary, capricious and not in accordance with the law. Plaintiffs argue that under the applicable statutes, regulations and DOJ orders, they are entitled to receive the same compensation as other DEA law enforcement officers, including special agents, based on the work performed by them during the course of their employment.

The DEA classifies investigators employed by the agency in two categories, GS–1810 Diversion Investigators in the General Investigating Series and GS–1811 Criminal Investigators, also referred to as special agents. According to the DOJ Grade–Level Guides for Classifying Investigator Positions (identified as TS–8, February 1972[1]), issued by the United States Civil Service Commission (now the Office of Personnel Management), GS–1810 General Investigating Series positions are described as follows:

This series includes positions that involve planning and conducting investigations covering the character, practices, suitability or qualifications of persons or organizations seeking, claiming, or receiving Federal benefits, permits, or employment when the results of the investigation are used to make or invoke administrative judgments, sanctions, or penalties. These positions require primarily a knowledge of investiga-

appear to be applicable.

tive techniques and a knowledge of the laws, rules, regulations and objectives of the employing agency; skill in interviewing, following leads, researching records, and preparing reports; and the ability to elicit information helpful to the investigation from persons in all walks of life.

By contrast, the guidelines describe the GS–1811 Criminal Investigator Series as follows:

This series includes positions that involve planning and conducting investigations relating to alleged or suspected violations of criminal laws. These positions require primarily a knowledge of investigative techniques and a knowledge of the laws of evidence, the rules of criminal procedure, and precedent court decisions concerning admissibility of evidence, constitutional rights, search and seizure and related issues; the ability to recognize, develop and present evidence that reconstructs events, sequences, and time elements, and establishes relationships, responsibilities, legal liabilities, conflicts of interest, in a manner that meets requirements for presentation in various legal hearings and court proceedings; and skill in applying the techniques required in performing such duties as maintaining surveillance, performing undercover work, and advising and assisting the U.S. Attorney in and out of court.

The guidelines indicate that "[t]he key distinctions between the general and criminal investigating occupations lie in the different kinds of investigations performed by each and the different knowledge, skills, and abilities those different kinds of investigations impose."

Plaintiffs' appendix includes excerpts from a *Study of the Diversion Program,* which, although undated, was formulated in response to a request for the study from the Acting Administrator of DEA in January 1990. The study concludes:

In formulating its recommendation, the Study Team reviewed the classification guides issued by the Office of Personnel Management (OPM) to determine what differences existed between the current 1810 and 1811 positions in DEA. As origi-

nally conceived, the 1810 position placed more emphasis on administrative actions and sanctions. However, as DEA's Diversion Program has evolved, its resources have shifted more and more away from wholesaler/manufacturer compliance to the conduct of diversion criminal investigations, i.e., investigations of DEA registrants suspected of violating the provisions of the Controlled Substance Act.

In performing these investigations, 1810s use all of the techniques used by 1811s to conduct their criminal investigations, except those currently precluded by the DEA policy document known as the "Miller Memorandum".

This report indicates that "1) they [GS–1810 investigators] work overtime on both diversion and criminal investigations and regulatory audits, but are rarely compensated and 2) a portion of this time is unscheduled and uncontrollable...."

On August 1, 1975, DOJ issued Order 1551.4A, which outlined a policy regarding benefits pursuant to "FLEPRA", also termed Administratively Uncontrollable Overtime (AUO). The policy was modified on September 29, 1978.[2] Specific individual positions considered eligible for AUO are outlined in the DOJ Order. The DOJ Order which lists as "Positions for which Administratively Uncontrollable Overtime Pay is Authorized: 1) Airplane pilot engaged in air-to-ground border patrol activities; 2) Border patrol agent; 3) Criminal investigator; 4) General investigator, GS–9 and above; 5) Officer-in-charge, Immigration and Naturalization Service domestic office, engaged in investigative duties; and 6) Immigration officer, foreign area, engaged in investigative duties." Appendix 1 to DOJ Order 1551.4A, Aug. 1, 1975, CHG 1 9/29/78).

Plaintiffs allege in the complaints filed with this court that the Department of Justice has refused to compensate its GS–1810 investigators in the same manner as the DEA compensates its GS–1811 personnel, in accordance with applicable statutes, regulations and internal orders. Defendant argues, how-

---

**2.** The copy of DOJ 1551.4A, dated August 1, 1975, which was included in defendant's motion to partially dismiss, includes a notation "REPRINT includes: CHG 1 9/29/78."

ever, that GS–1810 diversion investigators are not "law enforcement officers" under the applicable statutes, regulations and internal orders and, thus, should not receive the compensation requested.

On August 19, 1993, this court denied defendant's motion to partially dismiss on the grounds that 5 U.S.C. § 5545 can be read as a money mandating statute which gives this court jurisdiction over the plaintiffs' cases. This court also determined that the plaintiffs had alleged sufficient facts to support an arguable claim for uncompensated AUO. On September 27, 1993, the court consolidated the cases of *James Hannon, et al. v. United States*, Case No. 91–1334C and *Valencia Abrams, et al. v. United States*, Case No. 92–469C.

When filed, the complaints in the *Hannon* and *Abrams* cases were both accompanied by motions for class certification. The plaintiffs argue that their status as "law enforcement officers" is a common issue of law, which predominates over any separate factual issues, for the DEA diversion investigators who potentially form the class. The plaintiffs rely on the case of *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 453 F.2d 1272 (1972), as grounds for their request to certify a class in these actions and argue that all the criteria outlined in that case have been met. The defendant submits that class certification is inappropriate because in order to resolve the lawsuits, different factual findings will be required regarding each of the 340 plaintiffs.

### DISCUSSION

■ Class actions provide a court with the opportunity to prevent a multiplicity of suits based on a common wrong to all. *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). The courts have long recognized the need for an avenue to redress wrongs, otherwise unremediable, because the individual claims involved are too small, or the claimants are too widely dispersed. *Id.* at 297. Consequently, the class action procedure was created to allow a few representatives to sue on behalf of others similarly situated in order to obtain a judgment which

would bind all. *Id.; see, e.g. Smith v. Swormstedt*, 57 U.S. (16 How.) 288, 302, 14 L.Ed. 942 (1854).

Rule 23 of the United States Court of Federal Claims (RUSCFC), which parallels, but is not identical to, Rule 23 of the Federal Rules of Civil Procedure, allows this court wide discretion to determine whether class certification is appropriate in a given case. RUSCFC 23; *Buchan v. United States*, 27 Fed.Cl. 222, 223 (1992). RUSCFC 23 provides:

> A motion to certify a class action shall be filed with the complaint and comply with Rule 3(c), with service to be made as provided in Rule 4. The court shall determine in each case whether a class action may be maintained and under what terms and conditions.

RUSCFC 23. Although RUSCFC 23 does not offer specific criteria for determining in which cases class certification is appropriate, the United States Court of Federal Claims and its predecessors courts generally have disfavored class action suits, and have declared that certification of a class action is considered appropriate only in extraordinary cases. *Buchan v. United States*, 27 Fed.Cl. at 223; *Black v. United States*, 24 Cl.Ct. 471, 477 (1991); *Armitage v. United States*, 18 Cl.Ct. 310, 312 (1989); *Busby Sch. of No. Cheyenne Tribe v. United States*, 8 Cl.Ct. 596, 602 (1985); *Sanooke v. United States*, 8 Cl.Ct. 327, 329–30 (1985); *O'Hanlon v. United States*, 7 Cl.Ct. 204, 206 (1985). Class actions have been found appropriate only in those limited instances in which the court has been convinced that to do so would serve the interests of justice, and that the class representatives will adequately represent the class. *Kominers v. United States*, 3 Cl.Ct. 684, 686 (1983); *Cooke v. United States*, 1 Cl.Ct. 695, 698 (1983).

The decision in *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 453 F.2d 1272, frequently has been cited as setting a standard for assessing whether certification of a class is appropriate. *See, e.g. Crone v. United States*, 210 Ct.Cl. 499, 515, 538 F.2d 875, 884 (1976); *Clincher v. United States*, 205 Ct.Cl. 8, 11, 499 F.2d 1250, 1252 (1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43

L.Ed.2d 672 (1975); *Buchan,* 27 Fed.Cl. at 224; *Black,* 24 Cl.Ct. at 477; *O'Hanlon,* 7 Cl.Ct. at 206. The Court in *Quinault* set out eight conjunctive criteria for determining whether certification is appropriate:

> (i) [the members] must constitute a large but manageable class, (ii) there is a question of law common to the whole class, (iii) this common legal issue is a predominant one, overriding any separate factual issues affecting the individual members, (iv) the claims of the present plaintiffs are typical of the claims of the class, (v) the government has acted on grounds generally applicable to the whole class, (vi) the claims [class members] are so small that it is doubtful that they would be pursued other than through this case, (vii) the current plaintiffs will fairly and adequately protect the interests of the class without a conflict of interest, (viii) the prosecution of individual actions by members of the class, some in district courts and some in this court, would create a risk of inconsistent or varying adjudications.

*Quinault,* 197 Ct.Cl. at 140–41, 453 F.2d at 1276.[3] The plaintiffs argue that all of the *Quinault* criteria have been satisfied by the proposed members of their class, and that class certification is appropriate in the above-captioned cases.

■ The plaintiffs are correct that the first *Quinault* factor, which requires a large, but manageable, class, has been satisfied in the instant cases. The plaintiffs allege that there would be approximately 340 possible plaintiffs in the proposed class. Plaintiffs' counsel has assured that each of the 340 plaintiffs could be reached in order to be notified of the pending suit in the United States Court of Federal Claims. Compared to many class action suits, the proposed class in the instant cases is not a particularly large one. The plaintiffs properly argue that the class is of sufficient size, but is manageable, making the cases appropriate for certification as a class action under the first *Quinault* criteria.

■ The plaintiffs also correctly recognize that there is a common question of law applicable to the entire class. The core legal issue presented by these cases is whether the plaintiffs, GS–1810 diversion investigators, qualify as "law enforcement officers," pursuant to the Federal Employees Compensation Act (FECA), and/or the Federal Law Enforcement Pay Reform Act of 1990 (FLEP-RA), and, thus, are entitled to be compensated in the same fashion as the GS–1811 criminal investigators also employed by the DEA. Although each plaintiff does not claim the same compensation damages, the core legal determination is essential to each of the plaintiffs' claims. Moreover, if liability is found, and quantification of the amount of each plaintiff's damages remains the sole issue which requires a separate determination in each case, class certification should not be ruled out. In all likelihood, such damages could be computed mechanically, with relatively little controversy.

■ It also appears that factors five through seven in the *Quinault* test have been satisfied in the instant cases. The fifth *Quinault* requirement, that the DEA has acted on grounds generally applicable to the whole class, is met because the government is denying all DEA diversion investigators the compensation currently awarded to the GS–1811 criminal investigators.

■ The sixth requirement, that the claims of the potential plaintiffs be so small that it is doubtful that they would be pursued other than through a class action, also appears to be satisfied. Some of the plaintiffs in the instant actions are requesting compen-

---

3. The *Quinault* guidelines regarding whether to exercise discretion to certify a class have been frequently restated and refined. For example, in *Cooke v. United States,* the court suggested the following: "Certification should be granted most liberally in cases that fall within our areas of concurrent jurisdiction and thereby are subject to the risks of inconsistent adjudications ...; A showing of common factual issues should be weighed more heavily than a showing of common legal issues in granting certification ...; Certification should be granted most liberally where the amount of the individual recovery is small in relation to litigation costs ..." (citing *Quinault Allottee Ass'n v. United States,* 197 Ct. Cl. 134), and that "the probable cost of litigation would render individual actions unprofitable or create a serious free-rider problem." *Cooke v. United States,* 1 Cl.Ct. at 698.

sation under $1,000.00. If these plaintiffs were forced to pursue their claims individually, it is quite conceivable that those plaintiffs would not consider their claims worth pursuing.

■ The fourth and seventh prongs of the *Quinault* test, that the claims of the named plaintiffs are typical of the claims of the potential class and that these named plaintiffs will fairly and adequately protect the interests of the class without a conflict of interest, are satisfied by the nine named plaintiffs. Four of the plaintiffs are requesting compensation under both of the statutes FECA and FLEPRA, while the remaining five are requesting compensation under only one of the statutes at issue. Thus, the plaintiffs argue that they can adequately represent any DEA diversion investigator who seeks relief pursuant to either statute. Furthermore, neither side has raised any issue with regard to a possible conflict of interest respecting any of the named plaintiffs.

■ The third and eighth prongs of the *Quinault* test, however, present possible obstacles to certification of a class. The third factor enunciated in *Quinault*, that the common legal issue must "override" any separate factual issues affecting the individual members (*Quinault v. Allottee Ass'n v. United States*, 197 Ct.Cl. at 140–41, 453 F.2d at 1276), raises possible obstacles to certification. The district courts have interpreted the Federal Rules of Civil Procedure to allow class certification if common issues predominate, even though individual questions may outnumber common issues. *See Green*, 406 F.2d 291, 301; *Fogel v. Wolfgang*, 47 F.R.D. 213, 217 (S.D.N.Y.1969). In fact, in *Fogel* the court stated that "It would be anomalous to require under Rule 23(a)(3) that plaintiffs show that their claims are identical on every issue to those of other members of the class, since Rule 23(b)(3) specifically allows class action treatment where the court finds that common issues 'predominate'." *Fogel v. Wolfgang*, 47 F.R.D. at 217.

The third *Quinault* test seems to impose a somewhat stricter requirement that the common legal issues also should "override" any separate factual issues in the case, although the term "override" has not been clearly

defined. Although the plaintiffs contend that the predominant legal issue in the instant cases is whether those plaintiffs, who are classified diversion investigators qualify as "law enforcement officers" for the purposes of interpreting FECA and FLEPRA, the plaintiffs fail to address the second prong of this third *Quinault* test, that the predominant legal issue should "override" any separate factual issues affecting individual members.

Further complicating an assessment of whether these plaintiffs have meet the third *Quinault* criteria are decisions issued by the United States Court of Appeals for the Federal Circuit in which the applicable test to be used to determine benefit eligibility in an employment category has been articulated. The court has required an examination of the duties actually performed by the employee, not only an examination of the official position description assigned to the individual. *Felzian v. Office of Personnel Management*, 930 F.2d 898, 903 (Fed.Cir.1991); *Little v. Office of Personnel Management*, 762 F.2d 962, 964 (Fed.Cir.1985); *Ryan v. Merit Systems Protection Bd.*, 779 F.2d 669, 673 (Fed. Cir.1985); *Cole v. Office of Personnel Management*, 754 F.2d 984, 987 (Fed.Cir.1985); *Ellis v. United States*, 222 Ct.Cl. 65, 610 F.2d 760, 765 (1979). In *Felzian v. Office of Personnel Management*, 930 F.2d 898, the court wrote "we doubt that OPM could disqualify by rule or regulation all employees who hold a specific position." *Id.* at 903. In *Ryan v. Merit Systems Protection Board*, 779 F.2d 669 (Fed.Cir.1985), the United States Court of Appeals for the Federal Circuit indicated that "the substance of [the] job description and the duties he actually performed governed the outcome." *Id.* at 673 (citing *Morgan v. Office of Personnel Management*, 773 F.2d 282, 284–85 (Fed.Cir.1985)).

The plaintiffs in their filings with this court attempt to argue that because the cases issued by the United States Court of Appeals for the Federal Circuit, which require examination of an employee's actual duties, were not decided in the context of a class action, they are not controlling and add nothing to a determination of whether class certification is

appropriate.[4] The plaintiffs' argument, however, is not persuasive. Regardless of whether or not the cases discuss the propriety of class action certification, they are relevant as to the core legal issue raised in the instant cases: whether a plaintiff diversion investigator is a "law enforcement officer" for the purposes of compensation under FLEPRA and FECA. Applying the instructions included in the above Federal Circuit decisions to the cases at bar, this court believes that in order to resolve the instant cases further examination of the actual duties performed by each plaintiff in his or her employment capacity is required. Therefore, the third test included in *Quinault* has not been satisfied at this time.

Although the plaintiffs have failed to address the eighth prong in *Quinault Allottee Ass'n v. United States*, that the prosecution of individual actions by members of the class would create a risk of inconsistent or varying adjudications, given this court's decision not to certify the class at this time, plaintiffs' omission does not create a problem. The court notes, moreover, that because within the federal court system claims such as those filed by the plaintiff are unique to the United States Court of Appeals for the Federal Circuit, if appealed, there is little risk of inconsistent decisions by several courts.

## CONCLUSION

At this time,[5] the court concludes that based on the filings to date, it does not have before it sufficient information to make meaningful determinations as to whether the plaintiffs, individually, or as a group, qualify as law enforcement officers. In order to decide the above-captioned cases in accordance with the direction of the United States Court of Appeals for the Federal Circuit, this court must review the job requirements and job assignments performed by the DEA diversion investigators to determine whether they qualify as "law enforcement officers" pursuant to the FECA and/or FLEPRA. Therefore, this court finds that certification of the above-captioned cases as a class action is inappropriate at this time. Plaintiffs' mo-

---

4. The cases to which the plaintiffs refer are *Felzian v. Office of Personnel Management*, 930 F.2d at 902–03; *Little v. Office of Personnel Management*, 762 F.2d at 964; *Ryan v. Merit Systems Protection Bd.*, 779 F.2d 669, 672–73 (Fed.Cir. 1985); *Cole v. Office of Personnel Management*, 754 F.2d at 987; and *Ellis v. United States*, 610 F.2d at 765.

5. The court notes that caselaw has interpreted Rule 23 of the Federal Rules of Civil Procedure as directing that class action certification should be decided prior to any "determination" on the merits. *See Sanooke v. United States*, 8 Cl.Ct. 327, 331 n. 4 (1985); *Peritz v. Liberty Loan Corporation*, 523 F.2d 349, 354 (7th Cir.1975). In *Otto v. Variable Annuity Life Ins. Co.*, 98 F.R.D. 747 (N.D.Ill.1983), the court wrote, however, that "the rule of *Peritz* does not preclude a ruling prior to class determination on issues not based on factual matters beyond the face of the pleadings." *Id.* In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the United States Supreme Court, likewise, discouraged the idea of conducting a preliminary inquiry into the merits of a case in order to determine class certification. The *Eisen* Court stated:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes

the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it.

*Id.* at 177, 94 S.Ct. at 2152. In a subsequent case, however, the Supreme Court endorsed the idea of deferring the determination as to whether class certification was proper to a later date:

> Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.... This flexibility enhances the usefulness of the class-action device; actual, not presumed, conformance with Rule 23(a) remains, however, indispensable.

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

Therefore, although an inquiry into the merits of the instant cases would be contrary to Rule 23 prior to certification, this authority does not foreclose denying certification, without prejudice, and leaving open the opportunity to certify a class action if it becomes appropriate to do so later. Moreover, the decisions are consistent with the language of the Federal Rules of Civil Procedure 23 that the court should decide certification "as soon as practicable after the commencement of an action brought as a class action." Fed.R.Civ.P. 23.

tions for certification are, therefore, DENIED, without prejudice.

**IT IS SO ORDERED.**