Jimmie Ann TAYLOR, Ladell Vasicek, Noma Chriss, Martha Cole, and Sara M. McCarthy, Plaintiffs,

v.

UNITED STATES, Defendant.

No. 97–946 C.

United States Court of Federal Claims.

July 30, 1998.

Genice A.G. Rabe and Gail M. Dickenson, Dallas, Texas, for plaintiffs.

Patricia M. McCarthy, United States Department of Justice, Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director James W. Kinsella, for defendant.

## ORDER

MOODY R. TIDWELL, III, Senior Judge.

This action is brought by former employees of the Army and Air Force Exchange Service (AAFES) under the Separation Pay Act, 5 U.S.C. § 5597 (1994). Plaintiffs assert that defendant promised separation pay incentives to AAFES employees who applied for involuntary early retirement and retired after the Department of Defense authorized separation pay incentives for AAFES employees. Plaintiffs additionally assert that defendant failed to make separation payments to non-mobile persons and mobile persons who had not made a Permanent Change of Station (PCS) move under their current obligation of mobility. Plaintiffs' current motion, which defendant opposes, is to certify a class of all similarly situated persons pursuant to Rule 23 of the United States Court of Federal Claims (RCFC 23). As discussed below, the court finds that plaintiffs satisfy the criteria for class certification, and therefore plaintiffs' motion to certify a class action is allowed.[1]

## BACKGROUND

In October, 1992, Congress enacted the Separation Pay Act "to avoid or minimize the need for involuntary separation due to a reduction in force, base closure, reorganization, transfer of function, or other similar action affecting [one] or more defense agencies...." 5 U.S.C. § 5597(b). The Act authorized the Secretary of Defense to "establish a program under which separation pay may be offered to encourage eligible employees to separate from service voluntarily (whether by retirement or resignation)." *Id.*

On January 13, 1993, the Secretary of Defense approved separation pay incentives for AAFES employees. These pay incentives were extended on October 12, 1994. The incentives provided for separation pay to be paid in a lump sum equal to the lesser of either (a) the amount the employee would be entitled to receive under 5 U.S.C. § 5595(c)

(1994), if the employee were entitled to pay under this section;[2] or (b) $25,000. *See* 5 U.S.C. § 5597(d)(2).

All five named plaintiffs were hired by the AAFES between 1966 and 1968 and remained continually employed until their retirement between January, 1993 and March, 1996. Each volunteered for separation after AAFES's request for volunteers under the Separation Pay Act. Plaintiffs allege that defendant's failure to award them separation pay violates the Act. Plaintiffs also allege that defendant failed to make these payments because plaintiffs were either non-mobile or mobile, but had not made a PCS move. Plaintiffs Taylor, Cole, and McCarthy also filed discrimination charges against the AAFES.

On January 27, 1998, plaintiffs moved to certify a class consisting of:

> all future, present, and former Army and Air Force Exchange Service (AAFES) non-mobile employees and all future, present, and former AAFES mobile employees who did not make a Permanent Change of Station (PCS) move under their last obligation of mobility and who may seek or have sought voluntary separation by resignation or retirement in order to avoid or minimize the need for involuntary separation due to reduction in force, base closure, reorganization, transfer of function or other similar action since January 13, 1993, who have not received separation pay and who are, were, or will be employees as defined by 5 U.S.C. § 5597(a)(3).

Pls.' Br. in Supp. of their Mot. for Class Certification at 7–8. For the reasons discussed below, the court grants plaintiffs' motion for class certification.

## DISCUSSION

### I. Certification of a Class Action

 Federal district courts and the Court of Federal Claims utilize different rules when considering whether to certify class actions. This court's rules provide:

---

1. In making this determination, the court does not resolve any substantive legal issues or make any factual findings.

2. 5 U.S.C. § 5595 governs the determination of severance pay. The pay amount is a formulaic calculation based on years of service and age of the employee.

A motion to certify a class action shall be filed with the complaint and comply with Rule 3(c), with service to be made as provided in Rule 4. The court shall determine in each case whether a class action may be maintained and under what terms and conditions.

RCFC 23. Unlike Rule 23 of the Federal Rules of Civil Procedure, RCFC 23 is discretionary, granting the court freedom to determine under what circumstances to certify a class and the terms and conditions of the class once it is certified.

■ Despite this broad grant of discretion, prior cases in this court have repeatedly observed that class actions are "reserved for extraordinary cases and [are] generally disfavored." *O'Hanlon v. United States*, 7 Cl.Ct. 204, 206 (1985); *see Buchan v. United States*, 27 Fed.Cl. 222, 223 (1992); *Black v. United States*, 24 Cl.Ct. 471, 477 (1991); *Armitage v. United States*, 18 Cl.Ct. 310, 312 (1989), *aff'd*, 991 F.2d 746 (Fed.Cir.1993); *Cutright v. United States*, 15 Cl.Ct. 576, 578 (1988); *Busby School of the Northern Cheyenne Tribe v. United States*, 8 Cl.Ct. 596, 602 (1985); *Saunooke v. United States*, 8 Cl.Ct. 327, 329 (1985). The language disfavoring class actions originated in *O'Hanlon*, and appears to have been premised merely on the fact that class actions were not frequently certified in this court. *See O'Hanlon*, 7 Cl. Ct. at 206. The lack of class actions prior to *O'Hanlon* may be attributed more to the fact that previous cases were not suited for class action resolution than to a generalized belief that they should not be certified in this court. After *O'Hanlon*, however, courts appeared to treat the disfavored status language as a general rule, rather than making an individual determination regarding the propriety of each class action. Considering the discretionary nature of RCFC 23 and the fact that it calls for a case-by-case determination, there appears to be no basis for stating that class actions are "generally disfavored" and should be used only in "rare and extraordinary cases."

■ A frequently cited rationale for the disfavored status of class actions is related to the unique jurisdiction of this court. In cases where a money judgement is sought against the United States, the court requires individual proof of the amount of money damages. *See Buchan*, 27 Fed.Cl. at 225. This requirement is based on the belief that only individual plaintiffs can meet the burden of proof for damages when there is a waiver of sovereign immunity, which is always present in this court. *See Abel v. United States*, 18 Cl.Ct. 477, 478 n. 1 (1989); *Saunooke*, 8 Cl.Ct. at 329. While a valid concern, this rationale principally implicates the determination of money damages. In this case, the court can certify the class to determine whether the government is liable to class members for separation pay. Later, if necessary, the court can use a formula to determine damages for individual class members. If the determination of damages becomes too speculative or encumbered by individual factual issues, the court can decertify the class for the determination of money damages.

■ Prior cases have also expressed concern with class action procedures. In *Buchan*, the court argued that inherent difficulties existing with both opt-in and opt-out classes preclude their use in all but rare circumstances. *See Buchan*, 27 Fed.Cl. at 223–24; *Abel*, 18 Cl.Ct. at 478 n. 1. Procedural difficulties include legally binding parties who have not affirmatively joined the litigation through an opt-out class, or placing the court in the uncomfortable position of inviting parties to join the litigation through an opt-in class. The *Buchan* court concluded that, in light of these difficulties, the court can apply alternative methods, such as consolidating the cases or using a test case method. *See Buchan*, 27 Fed.Cl. at 226. Although the court recognizes that there are other viable methods, the court believes that in this case, certification of a class action is the most fair and efficient way to resolve the dispute.

The test case approach introduces a greater risk of duplicative litigation. *See Lumco Indus., Inc. v. Jeld–Wen, Inc.*, 171 F.R.D. 168, 175 (E.D.Pa.1997). Moreover, it is possible that several similarly situated persons would not be notified of the litigation, or through misunderstanding, fail to intervene. *See* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice &

Procedure § 1781, at 23 n. 32 (2d ed.1986). As a result, plaintiffs, defendant, and this court would be inconvenienced. For plaintiffs, there would be an increased chance of inconsistent adjudications; for defendant, there would be a chance of repetitious litigation, whether or not the United States won the test case; and for the court, there would be a backlog of factually similar cases. In contrast, a class action would efficiently resolve the issues while protecting the interests of both parties.

Despite this court's historical reluctance to certify class actions, the principal case interpreting RCFC 23, *Quinault Allottee Association v. United States*, 197 Ct.Cl. 134, 453 F.2d 1272 (1972), acknowledged the ability of plaintiffs to join together in a class, recognized the historical acceptance of class actions, and ultimately certified plaintiffs' class. *See id.*, 453 F.2d at 1275, 1277. Notably in *Quinault*, the court refused to adopt a general rule for the certification of class actions or the procedures for a class action once certified. *See id.* at 1275. Instead, the court. advocated a case-by-case approach with the potential of developing a general rule in the future. *See id.* at 1276. A general rule has yet to materialize and therefore, the court is free to apply its discretion when deciding when and how to certify a class.

■ Although the federal district courts and the Federal Court of Claims apply different rules when certifying a class, the *Quinault* criteria are influenced by the Federal Rules of Civil Procedure. The now familiar *Quinault* criteria are:

(1) members must constitute a large but manageable class; (2) there is a question of law common to the whole class; (3) a common legal issue overrides separate factual issues affecting individual members; (4) claims of the party plaintiffs are typical of claims of the class; (5) the Government must have acted on grounds generally applicable to the whole class; (6) the claims of many claimants must be so small that it is doubtful they would be otherwise pursued; (7) the party plaintiffs must adequately and fairly protect the interests of the class without conflicts of interest; and (8) the prosecution of individual lawsuits

must create a risk of inconsistent or varying adjudications.

*Buchan,* 27 Fed.Cl. at 224; *See Quinault,* 453 F.2d at 1276. In addition to the *Quinault* criteria, the court considers whether certification of the class action would serve the interests of justice. *See Moore v. United States,* 41 Fed.Cl. 394, 397 (Fed.Cl.1998); *Kominers v. United States,* 3 Cl.Ct. 684, 686 (1983). While the *Quinault* criteria are not exclusively applied, they are persuasive and helpful when determining whether to certify a class.

## II. Application of the Quinault Criteria

### 1. Is the class large but manageable?

■ The court finds plaintiffs' proposed class of at least 213 persons a sufficiently large but manageable group. Cases applying the numerosity requirement vary widely. *Compare Abel,* 18 Cl.Ct. at 478–79 (numerosity requirement not satisfied by class of over 1200 plaintiffs), *with Hannon v. United States,* 31 Fed.Cl. 98, 103 (1994) (numerosity requirement satisfied by class of 340 plaintiffs). The court is given the discretion to determine on a case-by-case basis whether a proposed class is sufficiently large, and in this case the court believes that the numerosity requirement is satisfied.

■ In determining whether a class is manageable, the court considers whether the members of the class are readily identifiable, easily reachable, and whether there are factual distinctions that would interfere with resolution of the issues and thus undermine the manageability of the class. *See Moore,* 41 Fed.Cl. at 397; *Hannon,* 31 Fed.Cl. at 103; *Armitage,* 18 Cl.Ct. at 313–14. Through limited discovery of AAFES records, plaintiffs can readily identify and notify the potential class members. Although the potential members are spread throughout the world, they are linked through the Army and Air Force, and as a result, should not be difficult to reach. Finally, there appears to be little factual variance among the claims. Plaintiffs' proposed class is manageable.

### 2. Is there a question of law common to the whole class?

In this case, the potential class members present a common question of law. This criterion is satisfied when there is one core legal question that is likely to have one common defense. *See Moore*, 41 Fed.Cl. at 397–398. Claimants are all former, present, or future non-mobile or mobile (without a PCS move) employees of the AAFES. They were all offered the separation pay option by the authority of the Secretary of Defense, and they all volunteered for early retirement within the same time period. Finally, they were all denied separation pay, allegedly in violation of the Act. As a result, the common question of law is "whether [d]efendants have violated the Separation Act ... by failure to pay separation pay to [p]laintiffs and class members." Pls.' Reply to Def.'s Resp. to Pls.' Mot. for Class Certification at 12. While there are limited factual differences among the plaintiffs concerning damages, where damages are the sole issue requiring a special determination, class certification should not be ruled out. *See Hannon*, 31 Fed.Cl. at 103. In this case, the core legal question, whether defendant violated the Act, is shared by the entire class. Factual differences involved in the damages determination are separate from the common question of law.

### 3. Does the common legal question override separate factual issues?

Factors relevant to this criterion are whether there are numerous factual issues that would require individual determination, whether there would be a delay of prompt resolution of the case because of these separate factual issues, and whether there is difficulty identifying the members of the class. *See Black*, 24 Cl.Ct. at 477–78; *Armitage*, 18 Cl.Ct. at 313–14. In this case, there are separate factual issues, such as the length of employment for each claimant, the date retirement was requested by each employee, and the amount of severance pay received by each employee. These minor factual differences do not predominate over the legal question such that certification of the class action is inappropriate. Many of the factual differences are related to whether a claimant is properly a member of the class and will not adversely affect determination of the common legal question. While there is a possibility that factual differences between mobile and non-mobile employees may ultimately override the common legal questions, the court retains the right to decertify the class and certify two classes or proceed with each case individually. A final consideration is the factual differences involved in determining damages. If a damages phase is necessary, the court may devise a formula to apply to each claimant or decertify the class if the damages assessments become too cumbersome or speculative. Presently, the common legal question predominates separate factual inquiries, and if this were to change, the court is free to decertify the class.

### 4. Are the claims of the named plaintiffs typical of the class?

The fourth *Quinault* factor is met in this case because the claims of the five plaintiffs are typical of the claims of the class. Each claimant was a non-mobile or mobile (without a PCS move) employee, held a position in the same division for roughly the same amount of time, voluntarily retired after being offered the separation pay incentive, and was denied separation pay under 5 U.S.C. § 5597. The claimants are similarly situated, they assert jurisdiction under the same statute, and they allege the same statutory violation. *See Moore*, 41 Fed.Cl. at 399–400. Therefore, the typicality requirement has been met.

### 5. Has the government acted on grounds applicable to the whole class?

This criterion has been met for essentially the same reasons as the typicality requirement. The government acted in the same manner towards all similarly situated plaintiffs. *See Hannon*, 31 Fed.Cl. at 103; *Buchan*, 27 Fed Cl. at 225; *Moore*, 41 Fed. Cl. at 399–400. In addition, the government's denial of separation pay affected all similarly situated plaintiffs in the same manner. *See id.* Finally, the case does not

implicate matters unique to a given job or employee. *See Armitage,* 18 Cl.Ct. at 312.

### 6. Were the damages allegedly suffered by the individual class members so small that it is doubtful they would be otherwise pursued?

 The relevant inquiry under this criterion is whether the class members would pursue the claim if the class was not certified. *See Hannon,* 31 Fed.Cl. at 103–04. Plaintiffs allege that if the Separation Pay Act had been applied in an appropriate manner, each claimant should receive damages ranging from more than $0 to $25,000. Although a $25,000 claim is larger than that is typically involved in class actions, it is unlikely that each plaintiff would bring an individual claim. By definition, many members of the proposed class are retired or near retirement, and under the circumstances, probably would not risk the cost of litigation to receive pay under the Separation Pay Act. Many of the plaintiffs already received some severance pay when they volunteered for retirement. Their claims will necessarily fall below $25,000.

Another consideration under this criterion is whether there is a better alternative to resolve this dispute. As mentioned previously, the court favors the efficiency inherent in a class action approach. The alternative methods, test cases, consolidation of cases, and permissive joinder, cannot efficiently adjudicate plaintiffs' claims in this case. Under the circumstances, the damages to individual class members are too slight to warrant individual litigation.

### 7. Will the named plaintiffs adequately and fairly protect the interests of the class?

 There is no evidence that plaintiffs' attorneys are unable to adequately represent the interests of the class. Plaintiffs' attorneys are neither members of the class nor related to members of the class, and they do not have an economic stake in a positive outcome of the suit beyond the potential recovery of attorney fees. *See Kominers,* 3 Cl.Ct. at 686 (interests of the class were not adequately represented when representative

of the class would unfairly profit from a ruling for plaintiffs); *Armitage,* 18 Cl.Ct. at 312. There is no evidence that counsel is incapable or lacks sufficient resources for the completion of the litigation. *See Black,* 24 Cl.Ct. at 478. Finally, there is fair and adequate representation when the representative is precluded from raising individual arguments and similarly situated persons are suing under the same statute. *See Moore,* 41 Fed.Cl. at 399–400; *Hannon,* 31 Fed.Cl. at 104. Considering the capabilities and resources of plaintiffs' attorneys and the discussion under the second, third, and fourth criteria, the court finds that there is adequate and fair representation for the class.

### 8. Is there a risk of inconsistent adjudications if individual actions are separately maintained?

In *Moore,* the court concluded that the eighth *Quinault* criterion is no longer applicable because the Federal Circuit hears all appeals from the district courts and this court in cases involving requests for money damages from the government. *See Moore,* 41 Fed.Cl. at 399–400 (citing 28 U.S.C. § 1295 (1994)). The court agrees with the *Moore* court that this criterion is no longer relevant.

### Equitable Test: Does certifying this case as a class action serve the interests of justice?

 Under the circumstances of this case, certifying the class serves the interests of justice. The court believes that a class action is the most efficient method of resolving this case. Plaintiffs are similarly situated with relatively few factual distinctions among their claims. The use of a class action will be more efficient for both plaintiffs, defendant, and this court. As discussed previously, a class action will decrease the chances of duplicative litigation and inconsistent rulings. A class action will also be more cost effective for all parties involved. Finally, as demonstrated in the previous discussion, it is appropriate to use a class action approach because the case satisfies the *Quinault* criteria. Therefore, considering efficiency, costs of litigation, and the *Quinault*

factors, it is in the interest of justice for the court to certify this class.

## III. Certification of an Opt-out Class

While the district courts regularly certify class actions on an opt-out basis, the Court of Federal Claims has traditionally applied an opt-in approach to class actions. In this case, the court believes that it is appropriate to utilize an opt-out approach. In the Court of Federal Claims, the preference for the opt-in approach originated with *Quinault.* The *Quinault* court expressed a general concern about binding absent class members with a traditional opt-out approach. *See Quinault,* 453 F.2d at 1275–76. Ultimately, however, the court certified the class under the opt-in approach because members of the class were not "widely scattered." *Id.* at 1276. The *Quinault* court recognized that all potential members of the class lived on the same reservation and knew of the litigation. *See id.* Thus under the facts of *Quinault,* it was more efficient to utilize an opt-in approach since there was no risk of potential members missing the opportunity to join the class because most claimants had knowledge or would likely gain knowledge of the suit due to their close physical proximity. In contrast, the potential class members in this suit are scattered throughout the world, and there is a greater likelihood that the members would not know of the litigation or realize the need to take affirmative steps to opt-in, and as a result, would be excluded from the litigation. In *Quinault,* the court's utilization of opt-in was based on the facts of *Quinault* and is not the absolute rule for class actions in the Court of Federal Claims.

Past courts have argued against the use of an opt-out approach. The principal argument they rely upon is that it is improper to bind parties who fail to exclude themselves. *See e.g. Saunooke,* 8 Cl.Ct. at 329–30. This concern, though valid, is relatively minor when balanced against the problems associated with an opt-in approach. First, an opt-in approach places the court in the uncomfortable position of inviting persons to join litigation. *See Buchan,* 27 Fed.Cl. at 223–24; *Cooke v. United States,* 1 Cl.Ct. 695, 698 (1983). Second, the opt-in procedure amounts to little more that a permissive joinder rule. It is therefore of limited use in informing potential class members of the suit and the claimants' right to join the suit. *See id.* at 697 n. 3. Third, with the opt-in method, the defendant loses the benefit of binding unidentified parties, which can lead to repetitive litigation and a risk of inconsistent verdicts. *See id.* Finally, and most importantly, considering the facts of this case and the characteristics of this class, an opt-out class will maximize the claims handled in one suit, and thus provide a just and efficient method to resolve the litigation.

RCFC 23 is discretionary, giving the court power to determine whether to certify and in what manner to certify a class action. Nothing prevents the court from using a method that it deems to be more efficient and appropriate for the case. Therefore, in the interest of efficiency and justice, the court finds that an opt-out class shall be applied in this case.

## CONCLUSION

Plaintiffs' motion to certify this action as a class action on an opt-out basis is allowed. The preliminary definition of the class shall be:

1. All future, present, and former AAFES non-mobile employees, and all future, present, and former AAFES mobile employees who did not make a PCS move under their last obligation of mobility;

2. Who may seek or have sought voluntary separation by resignation or retirement under the Separation Pay Act in order to avoid or minimize the need for involuntary separation due to reduction in force, base closure, reorganization, transfer of function or other similar action within the authorized time period; and

3. Who have not received separation pay; and

4. Who were or are employees as defined by 5 U.S.C. § 5597(c).

Counsel for plaintiffs and defendant shall generate a final definition of the class and a preliminary list of potential members of the

class. Also, the parties shall determine the best method to notify members of the class and determine the substance of the notification, including information regarding class members' options. Plaintiffs and defendant shall attempt to come to an agreement regarding definition and notification of the class, and submit a joint proposal to the court by August 31, 1998 for approval before actual notice is sent to the members. If no agreement is reached, the parties shall each make a limited filing of their notification plan by September 15, 1998.

In light of this order, plaintiffs' motion for oral argument filed May 15, 1998 is denied. In addition, the stay ordered on March 10, 1998 is lifted, and therefore, Plaintiffs' Motion for Reconsideration of Defendant's Request for Stay filed March 23, 1998 is moot.

**IT IS SO ORDERED.**

