Bertrand R. FAVREAU, II, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 99–339C.

United States Court of Federal Claims.

Oct. 25, 2000.

Order on Reconsideration Dec. 21, 2000.

Michael A. Feldman, Brunswick, ME, for plaintiff.

Bryant G. Snee, Assistant Director, and Alan J. Lo Re, Commercial Litigation Branch, Civil Division, Department of Justice, for defendant. With whom on the briefs

were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and LCDR John Hannink, Office of the Judge Advocate General, Department of Navy.

## OPINION

BRUGGINK, Judge.

Pending is plaintiffs' motion to certify this case as a class action. Plaintiffs are former members of the United States Armed Forces who were terminated from active duty for failure to meet obesity and/or physical fitness standards and from whom the government recouped enlistment and re-enlistment bonuses as a result of said terminations. Plaintiffs claim that by recouping these bonuses, the government violated the Military Pay and Allowances Act ("Military Pay Act"), 37 U.S.C. §§ 308 and 308(a) (1994 & Supp. IV 1998), and the Department of Defense Financial Management Regulation ("DoDFMR"), DoD 7000.14–R, Vol. 7a, Ch. 9, Special Pay: Enlistment and Reenlistment Bonus–Enlisted Members, ¶¶ 10931 [1] et seq. (2000). The motion has been fully briefed and orally argued and is now ready for decision. For the reasons stated below, the motion to certify is granted.

## BACKGROUND

Under certain circumstances, persons who enlist, re-enlist, or extend their period of enlistment in the United States Armed Forces receive a monetary bonus. See 37 U.S.C. §§ 308, 308(a). These bonuses serve as incentives either to enlist in areas experiencing personnel shortages, or with respect to the re-enlistment bonus, as a retention incentive for "military specialties with high training costs or demonstrated retention shortfalls." See D.O.D. Directive, No. 1304.21, ¶¶ 4.2.1, 4.3.1 (July 22, 1996). The government has the right to recoup any unearned portion of a bonus if an individual does not complete the enlistment or re-enlistment term, either voluntarily or because of misconduct. See 37 U.S.C. §§ 308(d)(1), 308a

(b). Pertinent to this case is the government's practice of recouping bonuses from individuals who are discharged because they fail to meet the applicable overweight/obesity and/or physical fitness standards. According to plaintiffs, such discharges are involuntary, and thus, any resulting recoupment violates 37 U.S.C. §§ 308, 308a as well as DoDFMR ¶¶ 090401 et seq.

Plaintiffs define the class they seek to represent as follows:

All past, present, and future members of the United States Armed Forces, including, but not limited to, the Department of Navy, the Marine Corps, the Department of the Air Force, the Department of the Army and the United States Coast Guard, who received or will receive enlistment and/or re-enlistment bonuses, and against whom the defendant has recouped, continues to recoup or will in the future recoup all or a portion of said bonus as a result of defendant's involuntary discharge of such members from the Armed Forces for reasons other than misconduct, namely, due to the member failing defendant's then-applicable overweight/obesity and/or physical fitness standards; and whose recoupment is subject to 37 U.S.C. §§ 308, 308a and the Department of Defense Financial Management Regulation ¶¶ 10931 et seq.

Plaintiffs speculate that the class thus defined will include over 500 persons, and that the claims would range from $300 to $20,000.

The issue before the court is whether to certify this as a class action. For the reasons stated below, the court concludes that certification as an opt-in class is appropriate. This certification, however, is conditioned on certain modifications to the class definition.

## DISCUSSION

 The leading case on class certification in this circuit is *Quinault Allottee Ass'n v. United States,* 197 Ct.Cl. 134, 453 F.2d 1272 (1972), which sets out various criteria to consider in deciding whether to certify a class. See *id.* at 140–141, 453 F.2d 1272. Those criteria are: (1) the potential litigants

---

**1.** These regulations have been renumbered. They now appear at DoDFMR ¶¶ 090401 et seq.

(2000).

constitute a large but manageable class; (2) a common question of law is present; (3) the common issue predominates over any separate factual issues affecting individual members; (4) the claims of the present plaintiffs are typical of the claims of the class; (5) the government has acted on grounds generally applicable to the whole class; (6) the claims of the class are so small that it is doubtful they would be otherwise pursued; (7) the current plaintiffs will adequately protect the interests of the class.[2] In addition to these seven criteria, the court also should ask whether certification "would serve the interests of justice by addressing possible statute of limitations problems or other concerns." *See Christian v. United States,* 46 Fed.Cl. 793, 816 (2000), *citing Berkley v. United States,* 45 Fed.Cl. 224, 234 (1999). As discussed below, based on these seven *Quinault* factors and general equitable interests, class certification is appropriate.

1. Is the class large but manageable?

■ The court is given wide discretion to determine on a case by case basis if the numerosity requirement is met. *See Taylor v. United States,* 41 Fed.Cl. 440, 445 (1998) (finding that proposed class of at least 230 persons was sufficiently large to meet numerosity requirement); *see also Berkley,* 45 Fed.Cl. at 231 (finding that the approximately 1,595 possible plaintiffs met the requirement). In this case, the prospective class of over 500 members meets the requirement.

■ In deciding whether a proposed class is manageable, the court considers whether the members are readily identifiable and reachable. *See Taylor,* 41 Fed.Cl. at 445 (finding that former employees of the Army and Air Force Exchange Service would not be difficult to reach); *Armitage v. United States,* 18 Cl.Ct. 310 (1989) (declining to certify class where criteria used to define class

had potential for improper self-nomination or self-exclusion). Defendant challenges the manageability of the proposed class. In particular, it argues that in order to identify those individuals whose bonuses were recouped, the government will have to manually sort through thousands of pay records. Defendant argues that this process of identification will be an "arduous and time consuming task . . . a virtual impossibility." Def's Resp. Br. at 6, 7.

The court believes there is a distinction between characterizing the class for purposes of notification and subsequent specific identification for purposes of class inclusion. The defendant incorrectly assumes that it will be responsible for identifying with certainty the names and addresses of all class members. An opt-in class can be tailored to embrace a general pool of potential class members which places the initial burden on specific members to self-identify. The identification process for purposes of class notification would have two parts. There would be a general notice to potential class members accomplished through national publications, as well as specific notice to individuals identified using the lists previously generated by the Defense Manpower Data Center ("DMDC").[3] Once potential class members self-identify as a result of either methods of notification, the task of confirming who is properly within the class because their bonuses were recouped, although still necessary, is less arduous, because the number of individuals is smaller. This final step may be deferred, however, pending resolution of the motions for summary judgment currently before the court. In such a way, the class is manageable.

2. Are there common questions of law?

■ There are three questions of law common to the entire class:[4]

---

**2.** The *Quinault* opinion set out an eighth factor—whether individual suits would create a risk for inconsistent adjudications. Given the Federal Circuit's appellate jurisdiction over Tucker Act and "little Tucker Act" decisions, the eighth factor is not applicable. *See Christian,* 46 Fed.Cl. at 793, 815 n. 6.

**3.** The DMDC is able to generate a list of those individuals who were discharged with separation

codes signifying both weight control failure or a failure to meet physical fitness requirements. *See* June 30, 2000 Tr. at 13–15. The DMDC is able to narrow that group down to those individuals who received bonuses. *Id.*

**4.** For purposes of clarity, the court broke the two questions of law proposed by the parties into three by separating the statutory and regulatory questions.

(1) whether the Military Pay Act, 37 U.S.C. §§ 308, 308a, permitted the government to recoup bonuses given to individuals who were separated because they failed to meet applicable standards for obesity and physical fitness;

(2) whether the DoDFMR ¶¶ 090401, *et seq.* and successor regulations permitted the government to recoup bonuses given to individuals who were separated because they failed to meet applicable standards for obesity and physical fitness;

(3) whether the government violated the express enlistment and/or re-enlistment contracts with plaintiffs by recouping bonuses when they were separated because they failed to meet applicable standards for obesity and physical fitness.

As defendant concedes, the question of whether the Military Pay Act permitted the government to recoup bonuses from persons discharged for failing to meet overweight/obesity or physical fitness standards is common to the entire class. In addition, the relevant terms of the enlistment or re-enlistment contracts are shared by the entire class.

Defendant argues, however, that multiple questions of law emerge when analyzing whether the DoDFMR permits recoupment of the bonuses. The challenge has two grounds. The first is that not all of the potential class members are subject to the same regulations. The only class members defendant cites, however, are those subject to Coast Guard regulations. Apparently, there have been occasions in the past when the Coast Guard did not operate as part of the Navy, but instead as part of the Department of Transportation, which does not use the DoDFMR. Plaintiffs made clear in their reply brief and during the October 4, 2000, argument, however, that they only seek to include in the class those whose recoupment is subject to Department of Defense regula-

tions. Plaintiffs agreed to accept defendant's representation that at no time pertinent to this action was the Coast Guard under the Department of Defense. The class definition, therefore, should not include any reference to the Coast Guard.

The second basis for defendant's challenge stems from plaintiffs' description of potential class members as including those who were discharged due to failing then-applicable "physical fitness standards." Defendant points out that Army, Air Force, and Marine Corps separation guides do not provide for separation on "physical standards" grounds but instead separate those who fail the services' fitness programs for "unsatisfactory performance." [5] In addition, defendant states that, while all of the services, including the Navy, separate individuals for "weight control failure," the DoDFMR does not contain an explicit determination for separations on that basis. Therefore, it argues that the court's legal analysis with respect to those individuals will be different from the analysis for individuals separated for "unsatisfactory performance," a category for which the DoDFMR explicitly permits recoupment.

A question of law is common to the entire class if there is likely to be only one defense to the legal question at issue. *See Moore v. United States,* 41 Fed.Cl. 394, 397–98 (1998). Defendant acknowledged during the October 4, 2000, arguments that all individuals separated for overweight/obesity or physical fitness reasons pose the same question of law. Thus, a modification of the class definition to exclude those individuals separated for unsatisfactory performance not related to "overweight/obesity or physical fitness" satisfies the defendant's objection.

3. Would factual issues predominate over legal issues?

Defendant argues that even if it should prevail, a question will remain whether re-

---

**5.** Initially there was, and to some extent still is, a question as to whether it was the government's practice to separate individuals for unsatisfactory performance if they failed the fitness program for physical fitness reasons. Nonetheless, because the regulation clearly provides for such separation, the class must be defined to ensure that where the substantive reason is related to physi-

cal fitness, the individual is included in the class. *See Personnel Separations, Enlisted Personnel,* Army Regulation 635–200, Ch. 13–2, p. 48 (June 26, 1996) (providing, in pertinent part, that a separation for unsatisfactory performance is required for "soldiers without medical limitations who have two consecutive failures of the Army Physical Fitness Test . . . .").

coupment was appropriate as to each individual. It is concerned that answering that question could require the court to determine whether the reason for separation was "within the control" of the individual. Plaintiffs acknowledge that there are "minor" factual differences, such as the branch of the Armed Forces, the basis for the discharge (weight control versus physical standards failure), and the amount of the bonuses recouped. But these differences would not appear to be relevant to the court's resolution of the common legal issues—the only grounds alleged for barring recoupment. If the plaintiffs fail in that regard, in other words, no other issues should remain. The third *Quinault* factor is satisfied.

### 4. Are the claims of the named plaintiffs typical of the class?

The court finds that plaintiffs' claims are typical of a class consisting of Army, Air Force, Navy and Marine Corps members. Each of the named plaintiffs entered into enlistment or re-enlistment contracts with one of these branches. In each contract there was an express provision stating that enlistment or re-enlistment bonuses could be recouped from members who were separated because of misconduct or upon the member's request or application. In addition, each of the named plaintiffs was separated from the Armed Services for failure to meet then-applicable overweight, obesity, or physical fitness standards and had their bonuses recouped as a result of the separation.

### 5. Has the government acted on grounds applicable to the whole class?

The fifth *Quinault* factor requires that the government has acted in a way that is generally applicable to the entire class. While defendant does not address this element in its response, the court agrees with plaintiffs that the element is satisfied. In each case the government recouped enlistment and re-enlistment bonuses from plaintiffs and class members for failing to meet then-applicable overweight, obesity, or physical fitness standards.

### 6. Were the damages allegedly suffered by the individual class members too slight to be worth litigating separately?

When deciding whether this criterion is met, the court asks whether it is doubtful individual claims would be pursued absent class certification. *See Berkley,* 45 Fed.Cl. at 233. Defendant argues that because twelve out of the fifteen named plaintiffs have claims at or more than three thousand dollars and in fact, that one plaintiff has a claim of nearly twenty thousand dollars, certification is inappropriate. Defendant appears to be arguing that amounts at or in excess of three thousand dollars are large enough to induce an individual plaintiff to bring suit on his own behalf. Plaintiffs focus the court's attention on those plaintiffs and potential class members who have claims of three thousand dollars or less. These claims, plaintiffs point out, are held by four out of the fifteen named plaintiffs and 67 out of the 506 already identified potential class members. Plaintiffs argue that given the "novel issues of federal statutory and regulatory law," litigation of these claims would be costly. *See* Pl's Reply Br. at 15. In addition, plaintiffs point out that because potential class members are geographically dispersed across the United States, bringing these claims would be cost prohibitive.

There is no magic number below which claims are automatically small enough and above which class certification would be inappropriate. *See Armitage,* 18 Cl.Ct. at 313 (finding that average claim of $500 to $1000 satisfies sixth *Quinault* criterion); *Taylor,* 41 Fed.Cl. at 447 (finding that "although a $25,000 claim is larger than that is typically involved in class actions, it is unlikely that each plaintiff would bring an individual claim"). In this case, claims ranging from $300 to $20,000 are not large enough to incite litigation, given the costs of pursuing the claims.

### 7. Will the named plaintiffs adequately protect the interests of the class?

There is no suggestion of any potential conflicts of interest. In addition, plaintiffs are represented by able counsel. This element is satisfied.

8. Does certifying this as a class action serve the interests of justice?

Certifying the class serves the interests of justice. Given the number of potential plaintiffs, the use of a class action will be the most efficient way to proceed. The alternative is to have hundreds of individuals either seek to join the lawsuit or initiate their own suits. Furthermore, there are significant concerns regarding an expiring statute of limitations. *See Moore,* 41 Fed.Cl. at 400; *Armitage,* 18 Cl.Ct. at 315. The court finds that class certification is in the interests of justice.

The court also finds that an opt-in procedure to determine the composition of the class is appropriate. *See Christian,* 46 Fed. Cl. at 818 (certifying an opt-in class). The court respectfully disagrees with the suggestion in *Taylor,* 41 Fed.Cl. 440, that an opt-out class can be certified in this court. Unlike a district court, which has broad declaratory judgment powers, this court has limited equitable jurisdiction. A monetary judgment, of necessity, has to run in favor of named individuals; there is thus no possibility of purely injunctive class-wide relief.

## CONCLUSION

Plaintiffs' motion to certify is granted. An opt-in class is certified consisting of persons who meet all of the following requirements:

(1) All past and present members of the United States Armed Forces, including the Department of Navy, the Marine Corps, the Department of the Air Force, and the Department of the Army;

(2) who received or will receive enlistment and/or re-enlistment bonuses and;

(3) against whom the defendant has recouped or continues to recoup all or a portion of said bonus;

(4) as a result of defendant's involuntary discharge of such members from the Armed Forces for reasons other than

misconduct, namely, due to the member failing defendant's then-applicable standards for overweight/obesity and/or physical fitness.

(5) Excluded are individuals for whom the substantive reason for separation was unsatisfactory performance and not overweight/obesity or physical fitness.

The parties are directed to confer and propose, jointly if possible, a means for notifying the potential class members and for receipt of their notifications. The parties will file a joint status report on or before November 30, 2000.

## ORDER ON RECONSIDERATION

The opinion of October 25, 2000, granted plaintiffs' motion to certify this as a class action. On November 8, 2000, defendant filed a motion to reconsider and/or clarify that opinion. The court heard oral argument on December 18, 2000. For the reasons stated below, defendant's motion for reconsideration is denied and the motion for clarification is granted.

■ Defendant asks the court to reconsider its finding that a common issue of law is present. It argues that multiple issues of law exist with respect to the Department of Defense Financial Management Regulation's recoupment provision ("FMR"). ¶¶ 090401 *et seq.* The plaintiffs' sole contention, however, is that recoupment from individuals who were separated from the services for reasons related to overweight/obesity and/or physical fitness can only be done pursuant to paragraph 090403.N(6) of the FMR. Although defendant argues that the government has the right to recoup under other categories in the FMR's recoupment regulation,[1] that defense simply mirrors plaintiffs' general contention. The common issue is whether recoupment is limited to paragraph N(6) of the FMR.

---

**1.** In particular, the government argues it has the right to recoup from individuals separated for unsatisfactory performance under paragraph L of the FMR's recoupment regulation and has the right to recoup from individuals separated for weight control failure pursuant to a March 10, 1992, letter from Assistant Secretary of Defense,

Christopher Jehn. Although these are different defenses, they share the common theme that paragraph N(6) is not the exclusive method of recoupment from individuals separated for reasons related to overweight/obesity and/or physical fitness reasons.

Defendant also argues that the typicality requirement is not met because no named plaintiffs were separated under the category "unsatisfactory performance." *See Quinault Allottee Ass'n v. United States,* 197 Ct.Cl. 134, 140, 453 F.2d 1272 (1972). The asserted risk is that, if the court should rule for defendant on liability, class members who were separated for unsatisfactory performance may in the future assert a similar claim and argue that their interests were not adequately represented in this suit. We disagree. The individual plaintiffs' claim and that of the class separated for unsatisfactory performance is the same—that paragraph N(6) was the only avenue for recoupment. Plaintiffs' proposed findings of uncontroverted fact filed in conjunction with their dispositive motion are on a level of generality that is not dependent on an individual service member's separation category. The government's defense is similarly based on its authority to categorize a service member's separation pursuant to categories other than "at the convenience of the government."[2]

In addition to its motion for reconsideration, defendant requested that the court clarify what "contract" it was referring to on page 7 of the opinion. This is an appropriate question. Defendant is correct that there is no contract containing the referenced language. The court therefore substitutes for the first full paragraph on page 7 the following paragraph:

> The court finds that plaintiffs' claims are typical of a class consisting of Army, Air Force, Navy and Marine Corps members. Each of the named plaintiffs entered into enlistment or reenlistment contracts with one of these branches. Each contract included a form entitled "C. Partial Statement of Existing United States Laws." Paragraph 9 of that form refers the service member to statutes and regulations governing pay and allowances, which would include 37 U.S.C. §§ 308 and 309(a) and FMR ¶¶ 090401 *et seq.* In addition, each of the named plaintiffs was separated from the Armed Services for failure to meet then-applicable overweight, obesity, or

physical fitness standards and had their bonuses recouped as a result of the separation.

For the foregoing reasons, defendant's motion for reconsideration is denied, while defendant's motion for clarification is granted. Defendant shall file its response to plaintiffs' cross-motion for summary judgment on or before January 31, 2001. The timing of plaintiffs' reply will be controlled by RCFC 83.2.

---

2. The government's defense is also based in part on the evolution within the various services of

the separation categories dealing with weight control failure.