Walter JAYNES, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 04–856C.

United States Court of Federal Claims.

Jan. 5, 2006.

Donald B. Scaramastra, Garvey Schubert Barer, Seattle, Washington, for plaintiff.

Steven M. Mager, Trial Attorney, Mark A. Melnick, Assistant Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Peter D. Keisler, Assistant Attorney General, United States Department of

Justice, Washington, D.C., for defendant. John D. Noel, Senior Trial Attorney, Daniel E. O'Connell, Jr., Senior Litigation Counsel, and Kathleen A. O'Neill, Senior Trial Attorney, Department of the Navy, Washington, D.C., and Steven L. Seaton, Puget Sound Naval Shipyard, Bremerton, Washington, of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

Before the Court is plaintiffs' motion for reconsideration of the Court's August 19, 2005 order denying class certification or, in the alternative, to certify the denial of class certification for interlocutory appeal to the United States Court of Appeals for the Federal Circuit. For the reasons set forth herein, plaintiffs' motion for reconsideration of the order denying class certification is DENIED, and plaintiffs' motion for certification of the order for interlocutory appeal to the Federal Circuit is DENIED.

## BACKGROUND [1]

The plaintiffs in this case are employees of the Puget Sound Naval Shipyard ("PSNS") located in Bremerton, Washington. Plaintiffs were employed and classified as shipwrights or were otherwise doing the work of shipwrights at PSNS. All shipwrights are assigned to Shop 64 at PSNS, which also includes insulators and woodworkers as well as employees from other shops ("loan-overs") who are sometimes assigned to do the work of shipwrights in Shop 64. The primary duties of shipwrights involve the erecting and dismantling of staging or scaffolding in and around naval ships in dry dock.

The employees brought an action to recover money damages against the United States for failing to pay Environmental Differential Pay for high work ("high pay") as mandated by Article 10 and Appendix II of the Bremerton Metal Trades Council ("BMTC") Agreement (the collective bargaining agreement ("CBA") between the BMTC and PSNS), as well as by Office of Personnel Management ("OPM") regulations, 5 C.F.R. § 532.511 (2005) and 5 C.F.R. part 532, subpart E, appendix A (2005). (5 C.F.R. part 532, subpart E, appendix A is hereinafter referred to as "OPM Regulatory Appendix A" or "OPM Reg.App. A.")[2] OPM Regulatory Appendix A, part I.2 and Appendix II of the BTMC Agreement define high work as:

a. Working on any structure of at least 30 meters (100 feet) above the ground, deck, floor or roof, or from the bottom of a tank or pit;

b. Working at a lesser height:

(1) If the footing is unsure or the structure is unstable; or

(2) If safe scaffolding, enclosed ladders or other similar protective facilities are not adequate (for example, working from a swinging stage, boatswain chair, a similar support); or

(3) If adverse conditions such as darkness, steady rain, high wind, icing, lightning or similar environmental factors render working at such height(s) hazardous.[3]

Shipwrights at PSNS are represented by a union called the Bremerton Metal Trades Council, Local Union 2317 ("BMTC"). However, not all shipwrights are members of the BMTC union. On April 13, 1999, the BMTC union filed a grievance on behalf of 99 employees, including the five named plaintiffs, demanding Environmental Differential Pay for high work. On January 18, 2000, Mary Jane Tallman, superintendent for the shipwrights, and Joe Aiken, the BMTC union

---

1. The Court recounts herein the facts relevant to the motion under consideration. For a more complete account of the underlying facts and developments in this case, see the Court's Opinion and Order denying plaintiffs' motion for summary judgment on liability on Count One of the amended complaint and denying defendant's cross-motion for summary judgment, *Jaynes v. United States*, 68 Fed.Cl. 747 (2005).

2. The relevant regulatory provisions defining high work have remained substantially unchanged since April 13, 1993, the earliest date of entitlement alleged in Count One of the amended complaint.

3. Work performed at or above 30 meters (100 feet) is not at issue in this case because PSNS management has always recognized its duty to pay a high work differential for work at such heights.

representative, signed the "Employee Grievance Decision, Shipwright Highpay Grievance #05153–K" ("Grievance Decision"). The Grievance Decision established a new prospective policy for the payment of high pay and limited the award of high pay to the period beginning 15 working days prior to the filing on April 13, 1999 of the grievance (March 23, 1999) and ending on the date of the Grievance Decision (January 18, 2000). *See* Def's. Cross–Mot. Summ. J. and Opp. Pls.' Mot. Partial Summ. J. ("Def's Cross–Mot.") at 5.

On April 14, 2000, 56 individual plaintiffs filed a complaint in the United States District Court for the Western District of Washington seeking review of the grievance decision's 15–working–day limit on the back pay awarded for high work allegedly performed prior to the filing of the grievance and a grant of class-wide[4] relief declaring an entitlement to six years' back pay with interest. *Jaynes v. Danzig*, No. C00–5221RJB (W.D. Wash. *dismissed* May 29, 2001), *aff'd*, 65 Fed.Appx. 176 (9th Cir.2003). The district court denied class certification on December 6, 2000. See Order Den. Pls.' Mot. to Certify Matter as Class Action, *Jaynes v. Danzig*, No. C00–5221RJB (W.D.Wash. Dec. 6, 2000). In March 2001, the Navy moved for dismissal for lack of subject-matter jurisdiction. The district court granted that motion. On May 22, 2003, the Ninth Circuit affirmed the district court's dismissal for lack of jurisdiction and remanded the case to the district court with instructions to transfer the case to the Court of Federal Claims. *See Jaynes v. Johnson*, 65 Fed.Appx. 176 (9th Cir.2003). Having affirmed the dismissal of the case, the Ninth Circuit declined to review the order denying plaintiffs' motion for class certification. *Id.* at 180. The case was transferred to this court on May 18, 2004 pursuant to 28 U.S.C. § 1631 (2000). Upon transfer of

the complaint to this court, 51 plaintiffs dropped out of the case.

Plaintiffs filed a motion for class certification concurrently with the original complaint[5] in this court on June 15, 2004. Defendant filed an opposition to the motion on August 20, 2004 and plaintiffs filed a reply on September 13, 2004. On November 4, 2004 the Court held oral argument on the motion. Plaintiffs and defendant filed supplemental briefs on January 7 and March 7, 2005 respectively. Plaintiffs most recently defined the proposed class as "[a]ll persons who were assigned as shipwrights at Puget Sound Naval Shipyard from April 14, 1994 to the present." *Jaynes v. United States*, No. 04–856C (Fed.Cl. Aug. 19, 2005), slip. op. at 2 (opinion and order denying class certification) (hereinafter *Jaynes*, No. 04–856C). The largest proffered estimate of the class size is 258 members.[6] *Id.* at 6.

On August 19, 2005, the Court denied plaintiffs' motion for class certification. On September 2, 2005, plaintiffs filed a motion requesting reconsideration of the order denying class certification or, in the alternative, for certification of the denial for interlocutory appeal to the Federal Circuit ("Pls.' Mot. Recons."). Pursuant to the Court's request, defendant filed an opposition to plaintiffs' motion on October 19, 2005 ("Def.'s Opp'n"). Plaintiffs filed a reply on November 9, 2005 ("Pls.' Reply").

## DISCUSSION

**I. Plaintiffs Have Not Shown That This Case Satisfies the Requirements for Certifying and Maintaining a Class Action**

   A.  Standard of Review for Motion to Reconsider Denial of Class Certification

■  Plaintiffs seek reconsideration of the Court's interlocutory order denying class cer-

---

4. In the district court, plaintiffs requested certification of a class "generally to be composed of all Shipwrights and others authorized to receive High Pay while assigned as Shipwrights, including retired Shipwrights and those who have terminated employee status as Shipwrights while eligible for High Pay." Compl. ¶ 9, *Jaynes. v. Danzig*, No. C00–5221RJB (W.D.Wash. Apr. 14, 2000).

5. Plaintiffs filed an amended complaint on July 14, 2004 dividing their claims into three counts. Count One alleges entitlement to high pay for the conditions described in OPM Regulatory Appendix part I.2(b)(1) and (b)(2). Count Two alleges entitlement for work at heights during adverse weather conditions, per part I.2(b)(3). Count Three seeks declaratory and injunctive relief.

6. The Court will assume the largest estimate for the purposes of this motion.

tification. Courts "possess inherent power to modify their interlocutory orders before entering a final judgment." *Wolfchild v. United States*, 68 Fed.Cl. 779, 784–85 (2005) (quoting *Florida Power & Light Co. v. United States*, 66 Fed.Cl. 93, 96 (2005)). Judges of this court have held that interlocutory orders are to be reconsidered in accordance with the doctrine of "law of the case." *Id.* at 785; *Florida Power & Light*, 66 Fed.Cl. at 95–97.

In addition to the standard of review for a motion for reconsideration, it should be noted that RCFC 23(c)(1)(C) provides that orders determining whether to certify an action as a class action "may be altered or amended before final judgment." On the other hand, "Rule 23(c)(1) provides [p]laintiffs with a *limited* opportunity to adduce additional facts: It is not a Trojan Horse by which Plaintiffs may endlessly reargue the legal premises of their motion." *Gardner v. First Am. Title Ins. Co.*, 218 F.R.D. 216, 218 (D.Minn.2003). With these standards in mind, the court reviews its August 19, 2005 order denying class certification.[7]

### B. Requirements for Class Actions in the Court of Federal Claims

A class action in the Court of Federal Claims is proper "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." RCFC 23(a).[8] Furthermore, a class action may only be maintained if, in addition to the prerequisites set forth in RCFC 23(a):

(1) the United States has acted or refused to act on grounds generally applicable to the class; and

(2) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

RCFC 23(b). The party seeking class certification bears the burden of establishing that all the requirements of Rule 23 are satisfied. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir.2005).

In its August 19, 2005 decision, the Court found that the first of the RCFC 23(a) requirements, "numerosity," was lacking although plaintiff had established the other three elements. *See Jaynes*, No. 04–856C, slip op. at 5–10. Numerosity, therefore, is the only Rule 23(a) prerequisite at issue in the motion under consideration. The Court also found that plaintiffs had satisfied RCFC 23(b)(1) by demonstrating that the United States acted or refused to act in a manner generally applicable to the class, but that they had not established that common questions of law or fact predominated over individual questions or that a class action was superior to other methods of adjudication. *See id.*, slip op. at 11–14.

### C. Rule 23(a)(1): Plaintiffs Have Not Established that the Proposed Class Is So Numerous that Joinder of All Members Is Impracticable

RCFC 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable" in order for the court to

---

7. Defendant has argued that, in order to succeed on its motion for reconsideration, plaintiff must show that: "(a) an intervening change in the controlling law has occurred; (b) evidence not previously available has become available; or (c) that the motion is necessary to prevent manifest injustice." Def.'s Opp'n at 2 (citing *Bishop v. United States*, 26 Cl.Ct. 281, 286 (1992)). Plaintiff has not contested this standard. Although this standard would apply if plaintiffs were seeking reconsideration of a judgment under RCFC 59, in light of the authorities discussed in the text above, the Court declines to hold plaintiffs to this higher standard of review in the context of re-

consideration of an inherently revisable interlocutory order. *See Fla. Power & Light*, 66 Fed.Cl. at 95–97.

8. Although there are significant differences between RCFC 23 and Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), RCFC 23 is largely modeled upon FRCP 23. *See* RCFC 23 Rules Comm. Note. The Court, therefore, at times relies upon decisions construing the relevant provisions of FRCP 23. *See Barnes v. United States*, 68 Fed.Cl. 492, 494 n. 1 (2005).

permit a class action. "Impracticable does not mean impossible." *Robidoux v. Celani,* 987 F.2d 931, 935 (2d. Cir.1993). "The representatives only need to show that it is extremely difficult or inconvenient to join all the members of the class." 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1762 (3d ed.2005). While the number of class members is central to the Rule 23(a)(1) inquiry, number alone is not determinative. Rather, the impracticability inquiry "depends on the particular facts of each case and no arbitrary rules regarding the size of classes have been established by the courts." *Id.* Several factors determine the practicability of joinder including, but not limited to, the size of the class, the ease of identifying its members and ascertaining their addresses, the facility of making service on them if joined, and their geographic dispersion. *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir.1986). "Joinder is considered more practicable when all members of the class are from the same geographic area." *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 131–32 (1st Cir.1985). The same is true when class members are easily identifiable. *Id.* at 132.

Plaintiffs argue the putative class in this case "is sufficiently large that the Court is virtually obligated to find numerosity absent substantial countervailing factors, which are not present here." Pls.' Reply at 5. Plaintiffs emphasize that several federal courts presume that numerosity is satisfied when the class exceeds 40 members and that even absent such a formal presumption, courts "almost unanimously" find that a class exceeding 100 members fulfils Rule 23(a)(1). *Id.* at 2. Defendant responds that courts have denied class status to groups with more than 300 members, e.g., *Minersville Coal Co. v. Anthracite Export Association,* 55 F.R.D. 426 (M.D.Pa.1971), and that such results are consistent with the Supreme Court's observation that the numerosity analysis "requires examination of the specific facts of each case." Def.'s Opp'n at 6–7 (quoting *General Telephone Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)).

At the outset, the Court declines to formally adopt a "presumption" approach to numerosity. "To the extent that any 'presumption' effectively alters the burden of proof on the numerosity requirement, the 'presumption' approach seems questionable and overly rigid compared to the generally accepted approach that numerical guidelines exist but are not controlling." 5 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 23.22[1][b] (3d ed.1997) (internal citation omitted). In any event, it seems that the presence of 56 plaintiffs in the district court action would quite effectively rebut any presumption of impracticability of joinder based merely upon the fact that the class exceeds 40 members. Here, however, the estimated size of the class in its largest formulation reaches 258 members, and plaintiffs have quite thoroughly illustrated the point that courts (or, at least, district courts) find that classes exceeding 100 members satisfy numerosity in the substantial majority of cases. *See* Pls.' Reply at 2 n. 5.

The Court nonetheless concludes that plaintiffs have not established that the putative class is so numerous that joinder of all members would be impracticable. Although the class could be as large as 258 members, all of these individuals work or have worked in Shop 64 at PSNS. At the time of the Court's opinion and order denying class certification (August 2005), 192 of the 258 potential class members (about 74 percent) still worked at the shipyard. *Jaynes,* No. 04–856C, slip. op. at. 6 n. 5. Of the 66 former employees, the Navy had determined that 18 still lived in the state of Washington, eight lived outside of the state, and one was deceased. *Id.* The Government expected that a large proportion of the other 39 former employees still lived in Washington. *Id.* (citing Def.'s April 5, 2005 Supp. Br. at 3). Given that, according to the latest information available to the Court, 74 percent of the putative class members work at the same facility and at least 81 percent of the class members reside within the same state, the geographic proximity factor must weigh heavily in the Court's analysis of impracticability.

It also appears that the Government can ascertain the identities of, and contact infor-

mation for, the employees of Shop 64, including loan-overs. Defendant's counsel represented to plaintiffs' counsel in a March 4, 2005 letter that the Government would provide that information to plaintiffs' counsel.[9] *See* Pls.' Reply, App. at 34. (Although plaintiffs protest that the Government has, to date, failed to provide the contact information, Pls.' Reply at 4, the Court expects defendant to promptly act in accordance with its representations.) Where, as here, the class members are both geographically proximate and easily identified and located by means of defendant's records, joinder is more likely practicable even in light of a large class population. For example, in *Hum v. Dericks*, 162 F.R.D. 628 (D.Haw.1995), plaintiff sought to represent 200 other plaintiffs who had artificial ligaments implanted by a particular doctor. *Hum*, 162 F.R.D. at 632. The court held that the plaintiff had failed to meet his burden of showing that joinder was impracticable "[b]ecause most of the proposed class members reside[d] in Hawai'i and [were] identifiable through [the hospital-defendant's] records." *Id.* at 634; *cf. Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624–25 (5th Cir.1999) (numerosity satisfied by between 100 and 150 class members where it was likely that some class members were geographically dispersed due to the "transient nature" of the gambling industry). In addition, of the 200 potential class members in *Hum*, 39 "likely class members" had signed an affidavit supporting the class certification motion. *Hum*, 162 F.R.D. at 634–35. The *Hum* court concluded that plaintiff had not "demonstrated that the 39 likely plaintiffs already signed up by counsel could not be joined, along with others yet to be identified." *Id.* at 635. The history of this case similarly indicates that large numbers of the putative class members have had little trou-

ble organizing. The original grievance had 99 signatories and 56 plaintiffs joined the original action in the district court.[10]

Plaintiffs further argue that a recent decision of this court mandates a finding that numerosity is satisfied here. The Court of Federal Claims most recently considered the issue of class certification in the context of federal civilian employees seeking back pay in *Barnes v. United States*, 68 Fed.Cl. 492 (2005). In that case, Department of the Navy hospital and medical employees alleged that the Navy wrongfully failed to pay them premium pay for night and weekend work when they took leave of less than eight hours in a pay period or were excused for designated holidays. *Barnes*, 68 Fed.Cl. at 493. The plaintiff class "potentially number[ed] in the thousands." *Id.* at 495. Although noting the sheer number of plaintiffs in the class, the *Barnes* court rested its numerosity finding largely on the ground that the class members could not properly be joined under RCFC 20(a) because their claims did not arise out of the same transaction, occurrence, or series thereof. *See id.* The court concluded, therefore, that joinder was not only impracticable, but also impossible. *See id.*

In support of their argument, plaintiffs submit that the *Barnes* court effectively "ruled that joinder of Navy civilian employees seeking back premium pay was impossible" and therefore certified "a class very much like this one." Pls.' Reply at 4. Given the seemingly inescapable conclusion that the thousands of potential plaintiffs in *Barnes* satisfied the numerosity requirement, the Court does not interpret *Barnes* to hold that the legal impermissibility (and resultant impossibility) of joinder under RCFC 20(a) would be sufficient to satisfy RCFC 23(a)(1). Rather, RCFC 23(a)(1) requires that the

---

**9.** In addition, defendant identifies by name 134 of the putative class members (apparently the 99 grievants plus 35 additional Shop 64 employees) in the materials it submitted detailing the high pay awards made pursuant to the Grievance Decision. *See* Def.'s Cross–Mot, App. at 14–18.

**10.** The Court is not swayed by plaintiffs' arguments, raised for the first time in their motion for reconsideration, that security at PSNS and the inability of plaintiffs and their counsel to "walk around the shipyard and talk to all prospective

plaintiffs" renders joinder impracticable. Pls.' Mot. Recons. at 3–4. First, it is unclear how these observations differentiate this case from any other in which the litigants are employed at a military installation. Second, to the extent plaintiffs' assertions in this regard are valid, they would seem to have been apparent to plaintiffs since the outset of this litigation and, as such, do not represent a change in circumstances that would cause the Court to revisit the denial of class certification.

class be "*so numerous that* joinder of all members is impracticable" (emphasis added). Although the RCFC 23(a)(1) analysis does not turn on the number of plaintiffs alone, the plain language of the rule requires at least a minimal causal connection between the numerosity of the potential plaintiffs and the impracticability of their joinder. *See Dannenberg v. Dorison,* 603 F.Supp. 1238, 1243 (S.D.N.Y.1985) ("Rule 23(a)(1) by its terms requires that the *number* of potential class members make joinder impracticable...."); MOORE § 23.22[1][d]. For example, the fact that addition of certain class members to an action would destroy the diversity jurisdiction of a district court would not establish that joinder is impracticable for the purposes of Rule 23(a)(1). *See* 7A WRIGHT, MILLER & KANE § 1762; *see also Hum,* 162 F.R.D. at 634 ("[J]oining non-diverse plaintiffs in a standard litigation would destroy complete diversity. However, this difficulty for [plaintiff] does not constitute the kind of 'impracticability' that justifies a finding of numerosity. If it did, a diverse plaintiff could satisfy numerosity by seeking to certify a class of one named diverse plaintiff and one non-diverse class member."). Likewise, the fact that joinder is legally impermissible under RCFC 20(a) for reasons unrelated to the number of potential class members is insufficient to support a finding of numerosity under RCFC 23(a)(1).

The Court concludes, as it did in its August 19, 2005 Opinion and Order denying class certification, that plaintiffs have not established that "the class is so numerous that joinder of all members is impracticable." RCFC 23(a)(1). Although plaintiffs' motion for reconsideration could be denied on this ground alone, the Court addresses the requirements of RCFC 23(b)(2) for the sake of completeness.

D. Rule 23(b)(2): Plaintiffs Have Not Established That Common Questions of Law or Fact Predominate and That a Class Action Is Superior to Other Available Methods of Adjudication

In order for a class action to be maintained, RCFC 23(b)(2) requires, in addition to the prerequisites of RCFC 23(a), that:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of a class action.

RCFC 23(b)(2). Plaintiffs seek reconsideration of the Court's conclusion that they had established neither the predominance nor the superiority element.

To begin, the nonexclusive "matters pertinent" to the RCFC 23(b)(2) inquiry do not, on their own, counsel decisively for or against class certification in this case. As the Court previously concluded, the factors set forth in RCFC(b)(2)(B) and (C) favor plaintiffs. *See Jaynes,* No. 04–856C, slip. op. at 14. Plaintiffs criticize the Court for giving "dispositive effect" to the anticipated size of the average individual claim in its consideration of RCFC 23(b)(2)(A), thereby defeating "an otherwise valid class action." Pls.' Reply at 15–16. The Court did not give the monetary estimate or the RCFC 23(b)(2)(A) individual interest factor any such dispositive effect, but the Court did conclude that the large size of the average claim in this case, combined with the possibility that there will be significant differences in amount among the shipwrights' individual recoveries, turned the individual interest factor in favor of defendant. *See Jaynes,* No. 04–856C, slip. op. at 14.

Plaintiffs have not convinced the Court that its conclusion was unsound. The Court suggested $67,000 as a rough estimate of the average individual claim based upon the damages estimate in plaintiffs' amended complaint and the contemporary anticipated size of the class. *See id.* Plaintiffs do not directly attack the validity of the Court's rough estimate, but rather question whether

such an amount would justify the cost of litigating a case like this one. *See* Pls.' Reply at 17. Although Rule 23(b)(3) "does not exclude from certification cases in which individual damages run high," *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Court remains unconvinced that individual recoveries of the magnitude sought in this case implicate the policy of "aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (1997)). Plaintiffs further argue that the stability of the shipwright workforce would tend to preclude any gross disparity of claims that would motivate the larger stakeholders to desire greater control over the litigation. Pls.' Reply at 17. The shipwright workforce at PSNS is demonstrably stable, but this does not eliminate the significant potential for disparate individual recoveries. Indeed, defendant's submissions detailing the individual back pay awards resulting from the Grievance Decision indicate a wide range of monetary recoveries. *See* Def.'s Cross–Mot, App. at 14–18. The high pay awards for the period covered by the Grievance Decision (March 23, 1999 through January 18, 2000) ranged from $100.17 (entry 21) to $6,029.28 (entry 106) plus interest, with a varying array of amounts between those figures. *See id.* Prorated over a six-year period (the approximate span of plaintiffs' claims in this case), differences merely approaching this magnitude could become very significant and might cause the larger stakeholders to desire greater control of their individual claims, thus affecting the cohesion of the class.

The Court therefore concludes that RCFC 23(b)(2)(A) weighs against class certification while RCFC(b)(2)(B) and (C) weigh in favor of certification. Mindful that these general "matters pertinent" to the RCFC 23(b)(2) inquiry are nonexclusive generally and indecisive in this case, the Court now considers the Rule's predominance and superiority requirements individually.

1. Plaintiffs have not established that common questions of law and fact predominate over individual questions

■ "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623, 117 S.Ct. 2231. The predominance requirement "is far more demanding" than Rule 23(a)'s commonality criterion. *Id.* at 623–24, 117 S.Ct. 2231. If the members of a putative class must present evidence that varies from member to member in order to make a prima facie showing on a given question, that question is an individual one. *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir.2005) (citing *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136–40 (2d Cir.2001)). "If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* Common issues predominate if the issues that can be resolved by generalized proof "are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002) (citing *Visa Check/MasterMoney,* 280 F.3d at 136).

In this case, each plaintiff must prove that he or she worked at heights below 100 feet under conditions where either the footing was unsure, the structure was unstable, the protective facilities were inadequate, or, in the case of Count Two of the amended complaint, the weather conditions were adverse. *See* OPM Reg.App. A, pt I.2(b). In their reply, plaintiffs characterize the predominant issue in this case in two ways: (1) whether work above ground on loose planks is work on unsure footing and, therefore, high work, Pls.' Reply at 5; and (2) "whether work on staging is high work" [11] under the OPM regulations and the BMTC Agreement. Pls.' Reply at 6. Plaintiffs state that such work is "regularly conducted by shipwrights" and that the "issue is common to all shipwrights who work on staging." Pls.' Mot. Recons. at 6. The Court disagrees that the predominant issue can be phrased in such a manner be-

---

**11.** The Court reiterates its doubt that "work on staging" and "high work" are necessarily coex-

tensive. *See Jaynes,* No. 04–856C, slip. op. at 12.

cause, even if the questions were answered in the affirmative, each plaintiff would still bear the burden of showing that they did such work during the period in question. Even if, as plaintiffs assert, each individual plaintiff will have to make their prima facie showing by using evidence of a "general and anecdotal nature" because PSNS did not keep records of high pay that it did not pay, Pls.' Reply at 7, this is not the same as saying that the class members can establish their entitlements on a class-wide basis by generalized proof. The anecdotal nature of the evidence does not obviate the burden of each plaintiff to show that he or she in fact performed high work as defined by the OPM regulations. Furthermore, even if plaintiffs' characterizations of the issue itself were accurate, plaintiffs also make arguments for high pay based upon the instability of incomplete staging and the lack or inadequacy of fall protection. Count Two depends entirely upon whether plaintiffs worked at heights during adverse weather conditions. These are further fact-intensive analyses that the court must conduct in order to fully adjudicate plaintiffs' claims as they are presented.

This court's opinion in *Barnes* provides a useful contrast. Judge Allegra determined that "because the assertion is that the Navy's failure to comply with the Federal pay statutes is systematic and long-standing, that issue is plainly more substantial than—and thus predominates over—the relatively straightforward calculation issues associated with determining the hours and amounts of premium pay to which each putative class member may be entitled." *Barnes*, 68 Fed. Cl. at 496–97. In this case, the Navy's systematic conduct cannot predominate because it is not at issue, *i.e.*, defendant has never contested the fact that it did not pay differentials for high work below 100 feet.[12] The controlling question here is whether, with respect to each plaintiff, defendant was re-

quired to do so. *Cf. Abrams v. United States*, 57 Fed.Cl. 439, 440 (2003) (predominance not satisfied where defendant conceded the common legal issue and plaintiffs were required to prove entitlement to premium pay during leave).[13] Furthermore, the court's inquiry into the unsureness of footing, the instability of a structure, the inadequacy of fall protection, or the adversity of weather conditions facing a particular employee is inherently more fact intensive, and far more dependent on each plaintiff's individual experience, than the determination whether an employee was denied premium pay for night, weekend or holiday work "when taking annual, sick or other paid leave of less than eight (8) hours within a pay period or when excused from duty on officially designated holidays." *Barnes*, 68 Fed.Cl. at 493.

Plaintiffs also argue that defendant's affirmative defenses are common to all or most of the class, and therefore support a finding of predominance. First, plaintiffs state that the defense of accord and satisfaction "obviously applies to all plaintiffs." Pls.' Reply at 10. Plaintiffs are correct that the accord and satisfaction defense is common to at least the employees who were covered by the Grievance Decision, if not all of the putative class, and would likely satisfy the commonality requirement of RCFC 23(a)(2). *See Favreau v. United States*, 48 Fed.Cl. 774, 778 (2000). Although accord and satisfaction is a significant and potentially dispositive legal issue in this case, it is not sufficient to establish predominance. This is not a case where the affirmative defense is the only, or even the primary, obstacle to plaintiffs' recovery. Rather, plaintiffs' ultimate success will depend upon the fact-intensive inquiry concerning individual entitlement detailed in the paragraphs above. The legal analysis of whether the Grievance Decision embodied an accord and satisfaction is less substantial

---

12. Indeed, the Court has already concluded that "the United States has acted or refused to act on grounds generally applicable to the class." RCFC 23(b)(1); *Jaynes*, No. 04–856C, slip op. at 11–12.

13. Most of the putative class members in *Abrams* apparently succeeded in gaining class certification in *Barnes*. *See Barnes*, 68 Fed.Cl. at 497–98. Only 39 of the 1,800 Navy employees in *Abrams*

received the benefit of the eventual settlement and of the underlying concession of the common legal issue, leading the *Barnes* court to decline to "ignore the apparent commonality of the issues presented here based upon an expedient concession that defendant might revoke at any time." *Id.* This case does not involve such an "expedient concession."

than the analysis of individual factual issues relating to the merits of each plaintiff's claim. Thus, the Court remains of the view that "questions affecting only individual members" predominate over "questions of law or fact common to the members of the class." RCFC 23(b)(2); *see Christopher Village, LP v. United States,* 50 Fed.Cl. 635, 642 (2001) (stating that factual commonality should outweigh legal commonality when considering class certification).

Secondly, plaintiffs contend that the court erred in its treatment of issues concerning the application of the statute of limitations to the putative class members. *See* Pls.' Reply at 11–15. To begin, plaintiffs are again incorrect in their assertions that the Court "gave the statute of limitations problem dispositive effect," Pls.' Reply at 12, and "conclud[ed] that statute of limitations problems were lethal to class certification." Pls.' Reply at 15. Rather, the court merely considered the Government's contentions regarding the potential for disparate application of the statute of limitations as a factor in its predominance analysis. *See Jaynes,* No. 04–856C, slip. op. at 13. For the purposes of this motion for reconsideration the Court will assume, *arguendo,* that plaintiffs are correct that defendant's potential statute of limitations defense will not require individualized fact finding and that the statute of limitations analysis "is common to all, or at least the vast majority, of the plaintiff class." Pls.' Reply at 15. Although this assumption removes from the balance an individualized issue that would weigh against a predominance finding, it adds little weight in support of plaintiffs' predominance argument. A statute of limitations analysis that, according to plaintiffs, should be fairly mechanical across the class does not predominate over the individualized fact-intensive issues that will largely determine plaintiffs' entitlement, even when considered along with the other

common issues in this case, such as accord and satisfaction. The Court again concludes that plaintiffs have not established that common questions of law or fact predominate.

2. Plaintiffs have not established that a class action is superior to other available methods of adjudication

The second prong of RCFC 23(b)(2) provides that a class action is properly maintained only after the court finds "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In making this assessment, the court must consider what alternative procedures are available for disposing of the dispute and compare the possible alternatives to determine whether Rule 23 will be sufficiently effective to justify the class action approach. *See* 7AA WRIGHT, MILLER & KANE § 1779. The superiority requirement is most clearly satisfied "if a comparative evaluation of other procedures reveals no other realistic possibilities." *Id.*

The possible alternatives to class certification in this case include joinder under RCFC 20(a) and individual civil actions that could be coordinated under this court's rules governing related cases (RCFC 40.2) and consolidation (RCFC 42(a)). *See Jaynes,* No. 04–856C, slip. op. at 7 n. 7. Citing *Barnes,* plaintiffs express concern that their claims do not satisfy the requirements for permissive joinder pursuant to RCFC 20(a), but provide little elaboration. *See* Pls.' Reply at 18. At this juncture, it is unclear to the Court why the claims of the putative class, which allege that PSNS improperly failed to pay high pay to Shop 64 employees on a continuing basis over a six-year period, do not "assert [a] right to relief . . . in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences." RCFC 20(a).[14]

14. RCFC 20(a) is not satisfied where plaintiffs' claims arise out of merely "similar," rather than "same" transactions, occurrences, or series thereof. *See Franconia Assocs. v. United States,* 61 Fed.Cl. 335, 336–37 (2004). It appears that many courts follow a flexible approach to deciding what constitutes the same transaction or occurrence or series of transactions or occurrences. *See, e.g., Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974) (approving, in the FRCP 20(a) context, application of the definition of the same transaction or occurrence utilized in interpreting FRCP 13(a) governing compulsory counterclaims: "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. . . . Absolute identity of all events is unnecessary.");

Plaintiff has not established that a class action would provide any discernible advantages over the available alternative methods of adjudication. The court's rules allow only opt-in classes, not opt-out classes. RCFC 23 Rules Comm. Note. The opt-in approach "resembles permissive joinder in that it requires affirmative action on the part of every potential plaintiff" in order to join the lawsuit and "unidentified claimants are not bound" by a ruling in defendant's favor. *Buchan v. United States,* 27 Fed.Cl. 222, 223 (1992). There is little, if anything, to be gained in terms of efficiency or the avoidance of multiple lawsuits by certifying the proposed opt-in class. A class action is not a superior alternative to allowing additional plaintiffs to join in this action or to bring their own individual suits in this court. The requirements of RCFC 23(b)(2) are not satisfied in this case.

## II. The Court's Denial of Class Certification is Not Suitable For Certification for Interlocutory Appeal to the Federal Circuit

■ Plaintiffs have made an alternative motion that the denial of class certification be certified for interlocutory appeal to the Federal Circuit pursuant to 28 U.S.C. § 1292(d)(2) (2000), which provides:

> when any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

*Luparello v. Inc. Village of Garden City,* 290 F.Supp.2d 341, 342 (E.D.N.Y.2003) (utilizing a logical-relation approach to the Rule 20(a) same transaction or occurrence requirement); 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1653 (3d ed. 2001 & Pocket Pt.2005) (suggesting logical-relationship test and noting that many federal

Interlocutory appeals under this section "are reserved for 'exceptional' or 'rare' cases and should be authorized only with great care" so as to avoid unnecessary piecemeal litigation. *Klamath Irrigation Dist. v. United States,* 69 Fed.Cl. 160, 161–62 (2005); *see Testwuide v. United States,* 56 Fed.Cl. 755, 766 (2003). In effect, 28 U.S.C. § 1292(d)(2) establishes three elements that must be present for certification: (1) a controlling question of law must be involved; (2) "there must be a 'substantial ground for difference of opinion' regarding that controlling question of law;" and (3) "immediate appeal ... may materially advance the termination of the litigation." *Klamath,* 69 Fed.Cl. at 162–63 (citing *Aleut Tribe v. United States,* 702 F.2d 1015, 1019 (Fed.Cir.1983)).[15]

Taking the last element first, it is likely that interlocutory appeal in this case would materially advance the ultimate termination of the litigation, assuming of course that the result of the appeal is reversal. In that event, appeal at this juncture would be more expedient than dealing with the consequences of reversal after a decision on the merits. *See Testwuide,* 56 Fed.Cl. at 767. The remaining elements, however, are lacking.

■ The first requirement is that the decision must involve "a controlling question of law." § 1292(d)(2); *Klamath,* 69 Fed.Cl. at 162–63. A controlling question of law is one that "materially affect[s] issues remaining to be decided in the trial court." *Klamath,* 69 Fed.Cl. at 162–63 (quoting *Marriott Int'l Resorts, L.P. v. United States,* 63 Fed.Cl. 144, 145 (2004)). In *Testwuide,* this court found that the denial of class certification presented a controlling question of law. *Testwuide,* 56 Fed.Cl. at 766–67. However, such a finding would be appropriate only in unusual circumstances. As the Third Circuit stated, a trial court:

> courts take a "liberal approach" in applying the same transaction or occurrence requirement).

15. The district courts employ a "virtually identical" standard under 28 U.S.C. § 1292(b). *Klamath,* 69 Fed.Cl. at 162–63 (quoting *Am. Mgmt. Sys., Inc. v. United States,* 57 Fed.Cl. 275, 276 (2003)).

should not certify for § 1292(b) consideration without stating persuasive reasons why the particular class action question is so unusual as to demand the intervention of an appellate court. In affording immediate appellate review of "controlling questions of law," § 1292(b) was not designed to substitute wholesale appellate certainty for trial court uncertainty under circumstances where, as here, the Rule gives broad discretion to the district court to revise its class action determination at any time prior to the decision on the merits.

*Link v. Mercedes–Benz of N. Am., Inc.,* 550 F.2d 860, 863 (3d Cir.1977). There is nothing so unusual about the class certification issues presented in this case as to require the intervention of the Federal Circuit. Although plaintiffs thoroughly supported both their numerosity and predominance arguments, particularly with regard to the size of the putative class, this case represents a routine (but by no means easy) application of the existing RCFC 23(a) and (b) standards to the circumstances of plaintiffs' action. In addition, under Rule 23(c)(1)(C), "[a] determination once made [with respect to class certification] can be altered or amended before the decision on the merits if, *upon fuller development of the facts,* the original determination appears unsound." Advisory Comm. Notes to 1966 Am. to Fed.R.Civ.P. 23 (emphasis added). The court's denial of class certification in this case does not involve a "controlling question of law" for the purposes of section 1292(d)(2).

The second requirement is that there exist "a substantial ground for difference of opinion" regarding the controlling question of law. § 1292(d)(2); *Klamath,* 69 Fed.Cl. at 163–64. Although there is no controlling question at issue here, the Court considers this factor for the sake of completeness. In *Klamath,* the court identified the bases that typically support a finding of a substantial ground for difference of opinion in this court: the existence of "two different, but plausible, interpretations of a line of cases;" a circuit split; "an intracircuit conflict or a conflict between an earlier circuit precedent and a

later Supreme Court case;" or "a substantial difference of opinion among the judges of this court." *Klamath,* 69 Fed.Cl. at 163–64 (collecting cases exemplifying each of the grounds); *see also Coast Fed. Bank v. United States,* 49 Fed.Cl. 11, 14 (2001) ("Usually, an issue on which there is 'substantial ground for difference of opinion' is one on which courts have disagreed."). No such circumstance is presented here. Although the court cannot state that its denial of class certification is "free of cognizable debate," the court finds no substantial ground for difference of opinion. *Klamath,* 69 Fed.Cl. at 163–64.

This case differs from *Testwuide,* in which the court deemed the class certification issue to present "an *extraordinary case* warranting interlocutory appeal." *Testwuide,* 56 Fed.Cl. at 766 (emphasis added). The court was faced with the task of determining whether plaintiff's novel method of defining the classes to be certified was viable in light of the complexities of the standards for determining whether a Fifth Amendment taking by "avigation easement" had occurred. *See id.* at 765–67. The trial court determined that there was a substantial ground for difference of opinion on the issue in part because its decision was "based on a premise not raised by either party." *Id.* at 767.[16] By contrast, there is nothing extraordinary about the Court's denial of plaintiffs' motion for class certification in this case. Rather, the Court made a fact-intensive determination, based upon on the record before it, that plaintiffs failed to satisfy the numerosity, predominance, and superiority requirements of RCFC 23.

Plaintiffs further suggest that the Court should analyze their certification motion in light of the standards governing interlocutory appeals of class certification decisions under FRCP 23(f). *See* Pls.' Mot. Recons. at 14–15. Rule 23(f) allows the courts of appeals, in their discretion, to permit an appeal from a district court order granting or denying class certification without the need for certification by the trial court. This court's rules do not contain an equivalent provision because the court lacks the statutory authori-

**16.** In any event, the Federal Circuit denied permission to appeal in *Testwuide. See Testwuide v.* *United States,* 73 Fed.Appx. 395 (Fed.Cir.2003) (unpublished order).

ty to promulgate such a rule. *See* RCFC 23 Rules Comm. Note.

Although neither the Court nor the Federal Circuit is authorized to remove the procedural disparity between interlocutory appeals to the Federal Circuit from district court class certification orders and interlocutory appeals from such orders of this court, the existence of Rule 23(f) could arguably provide some evidence that it is appropriate for a judge of this court to certify a particular order denying class certification for interlocutory appeal by following its own statutorily-authorized procedures. That is to say, Rule 23(f) could lend support to an argument that an order denying class certification constitutes a proper subject for interlocutory appeal under 28 U.S.C. § 1292(d)(2). Such an argument, however, would succeed only if allowing an appeal would be consistent with the policy of Rule 23(f) as enunciated by the courts of appeals. This case does not present such a situation. The courts of appeals have identified general categories of cases where interlocutory appellate review under Rule 23(f) is proper. One category includes cases where the class certification decision would "sound[ ] the death knell" of the litigation for either plaintiff or defendant. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 958 (9th Cir.2005) (citing *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834–35 (7th Cir. 1999)). Another category consists of cases in which interlocutory appeal "may facilitate the development of the law" of class actions because such cases often settle or reach final disposition without clear resolution of procedural matters. *Id.* The final category includes cases in which the district court's decision is "manifestly erroneous." *Id.* (citing, *inter alia, In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 105 (D.C.Cir. 2002)). "The kind of error most likely to warrant interlocutory review will be one of law, as opposed to an incorrect application of law to facts." *Id* at 959. "Like other circuits that have considered the issue, [the Ninth Circuit is] of the view that petitions for Rule 23(f) review should be granted sparingly." *Id.*

Plaintiffs do not assert that this case presents a "death knell" situation, but rath-er contend that the denial of class certification presents important questions relating to the law of class actions and that this Court's decision was manifestly erroneous. *See* Pls.' Mot. Recons. at 15–16. The two legal issues that plaintiff suggests are proper for interlocutory appeal are (1) "whether the proposed class should be certified," Pls.' Reply at 19, and (2) "the relationship between general interlocutory appeal under 28 U.S.C. § 1292(b) and class action interlocutory appeal under Rule 23(f)." Pls. Mot. Recons. at 15. As discussed in considering the section 1292(d)(2) elements above, the first question is clearly one of "application of law to facts." *Chamberlan*, 402 F.3d at 959. Regarding the second issue, the Federal Circuit has shown no discomfort with the fact that RCFC 23(f) is available to district court litigants but not to plaintiffs in this court. *See, e.g., Christopher Village, L.P. v. United States*, 25 Fed.Appx. 922 (Fed.Cir. 2001) (unpublished order) ("We agree with the Court of Federal Claims that its own rule, not Fed.R.Civ.P. 23(f), is applicable to its proceedings. Thus, a party may not seek interlocutory review of the denial of class certification under the rules of the Court of Federal Claims."). To the extent plaintiffs argue that allowing interlocutory appeal in this case would afford the Federal Circuit the opportunity to enunciate "what criteria will govern [its] acceptance of interlocutory appeal[s] of class certification decisions by this Court," Pls.' Reply at 19, such an opportunity does not warrant certification for interlocutory appeal where such action is otherwise unsupportable. Furthermore, as discussed in Section I, *supra*, the Court remains of the opinion that its August 19, 2005 denial of class certification was proper and, *a fortiori*, sees no basis to conclude that its denial of class certification was manifestly erroneous. Thus, even applying the policy of Rule 23(f) indirectly as part of the 28 U.S.C. § 1292(d)(2) analysis, certification for interlocutory appeal is not appropriate in this case.

## CONCLUSION

In light of the above, plaintiffs' motion for reconsideration of the Court's August 19, 2005 order denying class certification is DE-

NIED. Plaintiffs' alternative motion to certify the Court's August 19, 2005 order for interlocutory appeal to the United States Court of Appeals for the Federal Circuit is likewise DENIED.

The Court ORDERS that the parties shall participate in a telephonic status conference on Friday, February 3, 2006 at 2 p.m. EST in order to discuss further proceedings in this case. The Court will initiate the call.

IT IS SO ORDERED.